**Charles Dave HURD**

v.

**Capt. Dave WILLIAMS, Warden Howard Young, Capt. Williams, Lieutenant Hamilton, (Officer Irving Young (14)).**

**Appeal of Charles D. HURD.**

**No. 84–5471.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Jan. 29, 1985.

Decided Feb. 6, 1985.

 

Charles Dave Hurd, pro se.

Don C. Brown, Del. Dept. of Justice, Wilmington, Del., for appellees.

Before GIBBONS, SLOVITER and VAN DUSEN, Circuit Judges.

### OPINION OF THE COURT

SLOVITER, Circuit Judge.

In this action filed under 42 U.S.C. § 1983, appellant Charles Hurd, a state prisoner incarcerated in the Delaware Multi-Purpose Criminal Justice Facility, challenged the action of prison officials in depriving him of certain printed materials sent to him by his mother. A prison rule permits inmates to receive printed material only if it is sent directly from the publisher, and disallows receipt of hardbound volumes irrespective of source. The district court gave summary judgment for the defendants, state correctional officers, adopting the magistrate's report and recommendation.

The prohibition of all hardbound volumes is not before us because Hurd does not allege that he sought or will seek to purchase such volumes from a publisher. Instead, we focus only on the rule insofar as it limits an inmate's receipt of newspapers, periodicals and softbound volumes.

The district court relied on the Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520, 548–52, 99 S.Ct. 1861, 1879–81, 60 L.Ed.2d 447 (1979), as authority to support the promulgation and effectuation of this "publishers only" rule. In *Bell v. Wolfish*, the Court, after holding that considerations of internal security are central to the corrections system, upheld the constitutionality of the rule applicable in federal facilities which prohibited inmates from receiving hardbound books unless they are mailed directly from publishers, book clubs, or bookstores. *Id.* at 550, 99 S.Ct. at 1880. The Court held that this limited restriction is a rational response by prison officials to an obvious security problem because hardbound books are especially serviceable for smuggling money, drugs, and weapons in the bindings. It does not necessarily fol-

low that the ruling in *Bell v. Wolfish* may be automatically extended to paperbound books, magazines, and newspapers, as the district court ruled. The particular security problem presented by the bindings of hardbound volumes appears to be inapplicable to newspapers, and possibly also to paperbound books.

Nonetheless, it is apparent from the Supreme Court's decision that legitimate security concerns in prisons may override First Amendment considerations. If the state meets its burden of producing evidence that there is a potential danger to security posed by the prohibited materials, "the courts must defer to the expert judgment of the prison officials unless the prisoner proves by substantial evidence ... that the officials have exaggerated their response to security considerations. *Pell* [*v. Procunier*, 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974) ], or that their beliefs are unreasonable. *Jones* [*v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 128, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1977) ]." *St. Claire v. Cuyler*, 634 F.2d 109, 115 (3d Cir.), *reh'g denied by an equally divided court*, 643 F.2d 103 (1980).

In support of their motion for summary judgment, defendants filed the affidavit of Howard R. Young, warden of the prison, in which he stated that the "publishers only" rule is a "necessary tool used to safeguard against the introduction of contraband" into the premises; that "our experience has shown that these [hardbound and/or softbound] types of [packages] can carry drugs or other dangerous paraphernalia and contraband" (sic); that a complete and thorough inspection of incoming volumes would require large expenditures in terms of staff and machinery which are not available to the facility; and that the rule operates without regard to the philosophical, social, political or religious content of the published material. This affidavit from an expert in the corrections system is adequate to meet the burden of production which is placed on corrections officials to justify their policies. *Id.* at 114.

Plaintiff responded to the motion for summary judgment with two documents that appear to be part affidavit and part brief. We disregard their technical deficiencies and treat the factual assertions as filed in an affidavit since the documents have been notarized. Hurd alleges he is not a security threat, and includes the conclusory statement that the authorities have greatly exaggerated the security threat. He claims he is too poor to buy books to pursue his education in religion, to which the confiscated books pertain. Finally, Hurd also alleges that the risk of contraband is "absolutely controllable by inspection of incoming mail." However, an opposing affidavit must set forth such facts as would be admissible in evidence and must show that affiant is competent to testify to the matters stated therein. Fed. R.Civ.P. 56(e). Hurd's allegations are opinion, not fact, and the affidavits fail to set forth a sufficient basis for the introduction of lay opinion under Rule 701 of the Federal Rules of Evidence as based on first-hand knowledge or observation. Moreover, we note that Hurd admits "that contraband may be smuggled within the pages of a magazine, or in hallowed books." Accordingly, we hold that Hurd has failed to show that there is a genuine issue as to any material fact as to the existence of a security threat in the material subject to the "publishers only" rule. *See* Fed.R.Civ.P. 56(c).

Hurd's complaint that the regulation falls inequitably on the poor who cannot afford to buy new books from publishers as a basis for consideration has been rejected by the Supreme Court. In *Bell v. Wolfish* the Court stated, "To the limited extent the rule might possibly increase the cost of obtaining published materials, the Court has held that where 'other avenues' remain available for the the receipt of materials by inmates, the loss of 'cost advantages does not fundamentally implicate *free speech* values.'" 441 U.S. at 552, 99 S.Ct. at 1881 (emphasis in original). Hurd does not controvert Young's allegation that a library facility is available for the prisoners.

 

Hurd also argues that the facility's inadequate resources are an insufficient justification for imposition of the prohibition, and that we may sustain the regulation only if it is the least possible regulation of the constitutional right consistent with the maintenance of prison discipline. However, in *St. Claire v. Cuyler,* we disapproved that standard and held instead that "[t]he deferential review required by the Supreme Court's decisions leaves no room for a requirement that prison officials choose the least restrictive regulation consistent with prison discipline." 634 F.2d at 114. We are bound by this court's precedent.

Nonetheless, we take this occasion to express our concern about what may be the prison's overreaction to its undeniably real security problem. To rephrase a French saying, a day without reading is like a week without sunshine. We note that in *Bell v. Wolfish* the Court stated that the Bureau of Prisons would now allow receipt of paperback books, magazines and other soft-covered materials from any source. 441 U.S. at 549, 99 S.Ct. at 1879. Moreover, the prisoners in this facility appear to be incarcerated for a longer period than those at the facility at issue in *Bell v. Wolfish. Id.* at 524–25 n. 3, 99 S.Ct. at 1866–67 n. 3. Finally, in *St. Claire v. Cuyler,* we stated "that first amendment values must give way to the *reasonable* considerations of prison management." 634 F.2d at 114 (emphasis added).

We recognize the substantial burden Rule 56 poses for plaintiff prisoners who, acting alone, may find it difficult to obtain expert evidence as to the absence of any significant security risk in newspapers, magazines and paperbound books. Under Rule 56(f), plaintiff could have opposed the motion for summary judgment on the ground that he needed additional time to undertake discovery on the relevant issues. Plaintiff, however, made no such application in this case. We leave open the possibility that the record in another case may raise sufficient question that the security risk in such materials has been exaggerated as to require a plenary trial on the issue.

Since we are bound to decide this case on the basis of the record before us, we will affirm the judgment of the district court.

Each party to bear its own costs.