**Michael Charles WARD,
Plaintiff–Appellant,**

v.

**WASHTENAW COUNTY SHERIFF'S
DEPARTMENT and Thomas Minick,
Sheriff, Defendants–Appellees.**

No. 88–1886.

United States Court of Appeals,
Sixth Circuit.

Submitted on Briefs June 16, 1989.

Decided Aug. 1, 1989.

Charles H. Polzin, Clay D. Creps, Hill, Lewis, Adams, Goodrich & Tait, Birmingham, Mich., for plaintiff-appellant.

Robert E. Guenzel, Miriam E. Meier, Harris, Lax, Guenzel & Dew, Ann Arbor, Mich., for defendants-appellees.

Before KENNEDY, GUY and NORRIS, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge.

Plaintiff, Michael Charles Ward, a former inmate in the Washtenaw County Jail, filed a *pro se* complaint seeking damages and injunctive relief under 42 U.S.C. § 1983. Plaintiff alleged that defendants unconstitutionally denied him "access to all publications legally available to the general public." The district court granted the defendants' summary judgment motion and, upon appeal, a panel of this court remanded the case to determine whether plaintiff could prevail on a due process claim based on an entitlement created by state law. On remand, the district court again granted summary judgment for defendants, and plaintiff appeals. For the following reasons, we affirm the district court's decisions that plaintiff does not have a statutorily created entitlement to the publications at issue and that defendants' regulation limiting plaintiff to receipt of magazines from publishers only did not unconstitutionally violate plaintiff's first amendment rights.

I.

Plaintiff, while a pretrial detainee at the Ingham County Jail, purchased magazines such as "Playboy," "Penthouse," and

"Oui" from the jail commissary. Upon plaintiff's subsequent transfer to the Washtenaw County Jail, his magazines were confiscated and not returned to him during his stay at the facility. The Washtenaw County Jail officials also would not allow plaintiff to receive magazines that his brother brought to him while visiting plaintiff at the jail. Plaintiff was incarcerated at the Washtenaw County Jail from approximately March of 1979 until May of 1981, at which time he was transferred to a Federal Correctional Institution in Oklahoma.[1] Plaintiff had filed his suit in March of 1981, seeking both injunctive relief and damages for a denial of "access to all publications legally available to the general public." Defendants answered that they acted pursuant to their policies and procedures which permitted inmates to receive newspapers, magazines, and books from publishers or book clubs only (hereinafter referred to as "publishers only" rule).

In October 1982, the district court granted defendants' motion for summary judgment on the basis that plaintiff's claim for injunctive relief was rendered moot by his transfer to another facility, and that Washtenaw County's "publishers only" rule was valid in light of *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Plaintiff then appealed, and a panel of this court raised the issue of whether plaintiff could prevail on a due process claim based on an entitlement created by state law specifically within the Michigan Administrative Code. This court then remanded the case for further consideration in light of the then recent decision of *Spruytte v. Walters*, 753 F.2d 498 (6th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 767 (1986), and declined at that time to address all other issues in the case, "particularly the First Amendment issues." *Ward v. Washtenaw County Sheriff's Dept.*, 782 F.2d 1044 (6th Cir.1985).

On remand, the district court determined that the Michigan Administrative Code sections at issue apply to state penal institutions, and not to county jails. A separate set of regulatory schemes applies to county jails, and gives the local administrator authority to develop policies and procedures. Therefore, the district court held, defendants could promulgate the policy establishing a "publishers only" rule in the jail. The court then concluded that summary judgment had been properly granted in defendants' favor, and granted defendants' renewed motion for summary judgment.

## II.

■ Plaintiff's first claim on appeal is that the district court erred in holding that the Michigan administrative rules at issue in *Spruytte* do not apply to the Washtenaw County Jail. *Spruytte* involved a state prison inmate who brought a 42 U.S.C. § 1983 action against prison officials who prohibited Spruytte from receiving a paperback dictionary from his mother. 753 F.2d at 501. Spruytte claimed that the officials' refusal to give him the dictionary was based on a prison policy which was invalid under Michigan law. *Id.* Michigan's Administrative Code rule 791.6603(3) states in relevant part: "A resident may receive any book, periodical, or other publication which does not present a threat to the order or security of the institution or to resident rehabilitation." The *Spruytte* court concluded that the inmate was entitled to receive the dictionary as a matter of state law, and that this state-law entitlement rose to the level of a federally protected property interest.[2] 753 F.2d at 508.

The question in the case at bar, both on remand and on appeal, is whether rule 791.6603(3) applies to the Washtenaw County Jail. Michigan has established a complex scheme of regulatory authority over its prison system. The Department of Corrections, which is administered by the Commission of Corrections, has complete jurisdiction over Michigan's penal institutions. *See* Mich.Comp.Laws Ann. §§ 791.204 and

---

**1.** In a report and recommendation dated June 25, 1987, Magistrate Cooke noted that plaintiff was currently incarcerated at the Federal Correctional Institution in Milan, Michigan.

**2.** There was no claim in *Spruytte* that the paperback dictionary presented a threat to the order or security of the prison.

791.206. (West Supp.1989). The Department of Corrections also has authority to supervise and inspect local jails, and to promulgate rules and standards pertaining to the administration of the institution. Mich.Comp.Laws Ann. § 791.262 (West Supp.1989). The promulgated administrative rules are divided into two sections. One section applies to facilities maintained by the Department of Corrections which are Michigan's state penal institutions. *See* Mich.Admin.Code r. 791.1101–791.-10001. The second section applies to facilities operated by local units of government. *See* Mich.Admin.Code r. 791.501–791.665. A "local unit of government" is defined as including any county. Mich.Comp.Laws Ann. § 791.262(1)(d) (West Supp.1989).

The administrative rule at issue in *Spruytte*, rule 791.6603(3), falls within the section pertaining to state institutions. In contrast, the section of administrative rules pertaining to local units of government has no corresponding rule entitling inmates to receive any publications. Instead, substantial regulatory authority is delegated to the local prison administrator, defined as including the sheriff or chief of police. Mich. Admin.Code r. 791.501(1). This local administrator is authorized to develop rules regarding inmates, limited only in scope by rule 791.644(3) which states: "A rule applying to an inmate shall be pertinent and necessary to the safety, security, or function of the facility or harmony of the inmates. A capricious or redundant rule shall be avoided. . . ."

As a result of this administrative authority, the Washtenaw County Sheriff's Department developed a "Policy and Procedure Manual" which included the following section:

> Each ward will receive a copy of the *Ann Arbor News* every day. Inmates will be allowed to receive and read magazines and books. No form of censorship will be exercised over an inmate's choice of reading matter except for hard core por-

nography with pictures, and except for literature which there is reason to believe will cause a clear and present danger of disruption.

In addition, the Washtenaw County Sheriff's Department developed an "Inmate Guide Manual" which states in part:

> All inmates shall be permitted to receive newspapers, magazines, books and other types of publications which are legally available to the public generally; *but only from the publishers or from book clubs. None of these articles may be received from visitors.*

(Emphasis added). The officials who denied plaintiff access to his magazines acted pursuant to this latter policy.[3] Plaintiff also argues in his appeal that these policies are contrary to rule 791.655(2), which applies to county jails and states that "[i]nmate mail shall be inspected for contraband." Plaintiff contends that this rule requires an inspection of mail before it can be excluded, and does not advocate a general exclusion policy such as that imposed by a "publishers only" rule. We disagree, and find that the local administrator has the authority to establish a policy such as "publishers only," as long as the established policy complies with rules 791.501–791.655, which includes rule 791.655(2). The administrative rules pertaining to local governments' institutions are not all-inclusive and, instead, leave considerable authority to the local administrator for the management of the local jail.

Plaintiff also argues that as a pretrial detainee he was entitled to at least those privileges afforded to convicted state inmates, citing *O'Bryan v. County of Saginaw*, 437 F.Supp. 582 (E.D.Mich.1977). *O'Bryan* held that "pretrial detainees have an unqualified right to receive any publication which is legally available to members of the public generally; regardless of whether they receive such publications through the mail or from some other

---

**3.** There is additional statutory authority for counties to promulgate these rules pertaining to county jails. *See* Mich.Comp.Laws Ann. § 45.515 (the Charter Counties Act which allows counties to establish jails); § 51.75 (gives the sheriff the charge and custody of the jails); § 51.281 (gives the sheriff the authority to provide rules and regulations governing the conduct of prisoners).

source." *Id.* at 600 (citation omitted). While *O'Bryan* was on appeal, the Supreme Court decided *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).[4] In *Wolfish*, the Court upheld a "publishers only" rule which permitted pre-trial detainees to receive hardcover books from publishers or book stores only. The Court noted that there was no reason to distinguish between security risks of pre-trial detainees and convicted inmates and that, in some circumstances, pretrial detainees may pose a greater security risk. *Id.* at 546 n. 28, 99 S.Ct. at 1878 n. 28. In addition, defendants assert that the Washtenaw County Jail houses both pretrial detainees and sentenced inmates, and that the rule is applied uniformly to both groups.

In conclusion, we hold that the Washtenaw County Sheriff had the authority to establish a "publishers only" rule in the jail, and that the administrative rules at issue in *Spruytte* are not applicable to county jails. Additionally, we find no merit in plaintiff's argument that he should have been afforded the same privileges as convicted inmates in the state penal institutions.

### III.

■ Plaintiff's other claim on appeal is that the "publishers only" rule, as applied to magazines, violates his constitutional rights. Plaintiff is not contesting the constitutionality of the "publishers only" rule as applied to hardcover books (*Bell v. Wolfish*), but asserts that the district court erred in extending the rule to magazines on a summary judgment motion.

Defendants assert that only plaintiff's first claim is properly before us. Defendants argue that this case was remanded for the sole purpose of determining whether the administrative rule in *Spruytte* was applicable to county jails; however, when this court remanded the case to consider the applicability of the administrative rule, the panel specifically stated that it was declining "to address at this time the other constitutional issues, particularly the First Amendment issues." *Ward v. Washtenaw County Sheriff's Dept.*, 782 F.2d 1044 (6th Cir.1985). When the district court decided the remanded issue in defendants' favor, plaintiff was left in exactly the same position that he was in before the first appeal. Therefore, plaintiff can appeal issues related to the original grant of summary judgment, since none of these issues was decided or addressed by this court on the first appeal.

In the original grant of summary judgment, dated October 29, 1982, the district court adopted the magistrate's report and recommendation as the court's findings and conclusions. The magistrate's report determined that plaintiff's claim for injunctive relief was mooted by his transfer to Oklahoma, and that the "publishers only" rule had been held constitutional in *Bell v. Wolfish*. Plaintiff was generally acting *pro se* at this time and had filed his complaint, amended complaint, and objections to the magistrate's report and recommendation *pro se*. Throughout all of his filings, plaintiff alleged that defendants had deprived him of his constitutional right to receive the magazines, "no matter what the source."

The magistrate stated that the constitutionality of the "publishers only" rule which pertained to hardcover books in *Bell v. Wolfish* had been extended to other publications. However, in each of the cases cited in the magistrate's report, the constitutionality of the "publishers only" rule as extended to other publications was not at issue. *See Kincaid v. Rusk*, 670 F.2d 737 (7th Cir.1982) (inmate filed suit over jail officials' total ban of all reading material except non-pictorial paperbacks—"publishers only" rule not at issue); *Zaczek v. Hutto*, 642 F.2d 74 (4th Cir.1981) (inmate denied, pursuant to "publishers only" rule, book sent to him by his mother. Inmate conceded that *Bell v. Wolfish* applied, but

---

4. A panel of this court remanded *O'Bryan* to the district court for reconsideration in light of *Wolfish*. *O'Bryan v. County of Saginaw*, 620 F.2d 303 (6th Cir.1980). The parties subse-quently settled the "publishers only" rule issue. *O'Bryan v. County of Saginaw*, 741 F.2d 283, 284 (6th Cir.1984).

asserted that the rule deprived him of meaningful access to the courts); *Cotton v. Lockhart*, 620 F.2d 670 (8th Cir.1980) (prison inmate contested validity of "publishers only" rule as it applied to receipt of religious books that were unavailable from publishers); *Rich v. Luther*, 514 F.Supp. 481 (W.D.N.C.), *cert. denied*, 454 U.S. 1097, 102 S.Ct. 691, 70 L.Ed.2d 654 (1981) (issue was whether *Bell v. Wolfish* applied to inmates in state prisons. Inmate had been mailed two books from a non-publisher source). Although in several of these cases the "publishers only" rule encompassed books, magazines, and newspapers, the courts in each of these cases did not address the issue of whether the "publishers only" rule could extend to magazines without violating an inmate's first amendment rights.

Although we conclude that, at the time of the original grant of summary judgment in 1982, *Bell v. Wolfish* had not been clearly extended to softcover publications, since 1982 the "publishers only" rule has been upheld as constitutional when applied to softcover publications. *Kines v. Day*, 754 F.2d 28 (1st Cir.1985); *Hurd v. Williams*, 755 F.2d 306 (3d Cir.1985). In *Kines*, a Massachusetts state prison inmate brought a section 1983 action alleging that the prison's "publishers only" rule, which included softcover books and newspapers, violated his first amendment rights. The court upheld the prison's "publishers only" rule by applying the analysis set forth in *Bell v. Wolfish* and concluding that the rule served a significant governmental interest in internal security. *Kines*, 754 F.2d at 30. In *Hurd*, a Delaware state prisoner brought a similar civil rights action alleging that the prison's "publishers only" rule, which limited his receipt of newspapers, periodicals, and softcover books, unconstitutionally infringed upon his first amendment rights. The *Hurd* court stated that *Bell v. Wolfish* could not be "automatically extended" to softcover publications. *Hurd*, 755 F.2d at 308. The court then continued on to apply the *Bell v. Wolfish* analysis and hold that the rule at issue could be upheld as a response to a legitimate security concern.

We agree with the conclusions in both of these cases, and hold that, in the case before us, the district court correctly granted summary judgment for defendants on the issue of whether defendants' "publishers only" rule violated plaintiff's first amendment rights. In *Bell v. Wolfish*, the Supreme Court concluded that the challenged "publishers only" rule was reasonable as to time, place, and manner, and necessary to further significant governmental interests. 441 U.S. at 552, 99 S.Ct. at 1881. The Court considered as relevant the security risks associated with hardcover books, the content-neutral operation of the rule, and the availability of other sources for first amendment materials. *Id.* In the case at bar, defendant Sheriff Thomas Minick has submitted an affidavit in which he states that Washtenaw County Jail's "publishers only" rule is necessary to control the security problems caused when contraband such as drugs and weapons are smuggled in various books, magazines, and newspapers to inmates from unidentified sources or visitors. Minick also states that a proper and thorough inspection of all newspapers, magazines, and books from non-publisher sources would result in a "drastic drain" on staff resources plus be unduly expensive. This affidavit is similar to the one submitted by the warden in *Hurd*, and upheld by the court as adequate to meet the burden placed on corrections officials to justify their policies. Furthermore, Washtenaw's rule operates in a content-neutral manner, and plaintiff has access to other first amendment materials because he can order magazines or similar softcover materials from publishers.

*Bell v. Wolfish* emphasized that prison officials' legitimate security concerns may override an inmate's first amendment rights. "Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. at 547, 99 S.Ct. at 1878 (citations omitted); *see also*

**330**

*Brooks v. Seiter,* 779 F.2d 1177, 1181 (6th Cir.1985).

The Supreme Court has recently re-emphasized the deference due prison administrators and provided guidance in evaluating whether prison rules unconstitutionally infringe on inmates' first amendment rights. *Thornburgh v. Abbott,* —— U.S. ——, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). *Abbott* holds that the proper inquiry is whether the regulations at issue are "reasonably related to legitimate penological interests." 109 S.Ct. at 1876, quoting *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). In *Abbott,* the prison regulations stated that the warden may reject any publication for good reason pursuant to specific criteria, but he must review each issue separately. Inmates brought a class action alleging that the regulations violated their first amendment rights. The Court utilized the factors set forth in *Turner* to channel the "reasonableness" inquiry. The three relevant *Turner* factors concern, first, whether the governmental objective underlying the regulation is legitimate and neutral; second, whether inmates have alternative means of exercising their first amendment rights; and third, the impact that accommodation of the asserted right will have on others, such as inmates and guards, in the prison. *Abbott,* 109 S.Ct. at 1882–84. In the case before us, defendants' regulations serve the legitimate and neutral objective of jail security, inmates have alternative means of receiving publications as discussed above, and Sheriff Minick has stated the extent of the detrimental impact that accommodation of plaintiff's desire to receive softcover publications from all sources would have on the operation of the jail.[5]

As the Supreme Court explained in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), "the mere existence of *some* alleged factual dispute between the parties will not de-

feat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48, 106 S.Ct. at 2509–10 (emphasis in original). A fact is "material" when it is capable of affecting the outcome of the suit under governing law; a dispute about a "material fact" is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510.

In conclusion, we hold that defendants' regulations are reasonably related to legitimate penological interests, and that because plaintiff has failed to show that there is a genuine issue as to any material fact, summary judgment was properly granted in defendants' favor.

AFFIRMED.

---

**5.** We note that plaintiff has submitted an affidavit in which he states that neither he, nor any other prisoner that he knows of, has ever tried to smuggle contraband into the jail, and that inspection of incoming publications by jail staff would not unduly burden Washtenaw County

Jail's time or financial resources. This affidavit is based on plaintiff's opinion and not on first-hand knowledge or observation and is therefore insufficient to establish that there is a genuine issue precluding summary judgment. *See Hurd,* 755 F.2d at 308.