Clifford E. AVERY, Sr.

v.

Ronald L. POWELL, Commissioner,
New Hampshire Department of
Corrections, et al.

Civ. No. 91–704–JD.

United States District Court,
D. New Hampshire.

Oct. 26, 1992.

Clifford E. Avery, Sr., pro se.

William C. McCallum, Concord, N.H., for defendants.

## ORDER

DiCLERICO, Acting Chief Judge.

Plaintiff Clifford Avery ("Avery"), an inmate at New Hampshire State Prison, filed a *pro se* 42 U.S.C. § 1983 complaint against defendants Ronald Powell ("Powell"), Commissioner of the New Hampshire Department of Corrections, Michael Cunningham ("Cunningham"), Warden of the New Hampshire State Prison, and Patricia Lahey ("Lahey"), mailroom officer at the New Hampshire State Prison. Defendants filed a motion to dismiss on April 14, 1992. Avery was granted a 30 day extension to May 24, 1992, to respond to the motion to dismiss, but filed no answer. The court addresses defendants' motion to dismiss.

*Facts*

On November 21, 1991, Avery's sister sent him a blank Thanksgiving card to send to his mother. The card was not delivered to Avery, pursuant to a prison policy prohibiting prisoners from receiving blank greeting cards unless sent from vendors. This policy was published to the prisoners in a letter from Cunningham on November 13, 1991. The policy states

> [g]reeting cards are not on the list of authorized property and they are not sold in the [prison inmate store], however, if you wish to receive greeting cards to send to family members they may be sent direct from a vendor in a factory sealed package. Greeting cards are not authorized to be mailed in from home.

Avery challenges the constitutionality of this policy.

Avery also protests prison policy and procedure directive 2.5.26 subpart IV(D) ("PPD 2.5.26 IV(D)"), which prohibits inmates from receiving soft-bound books, magazines, periodicals and newspapers unless they have been packaged and mailed

by a bona fide publisher or bookstore or by direct subscription. Finally, Avery challenges policy and procedure directive 2.5.26 subpart IV(F) ("PPD 2.5.26 IV(F)"), which prohibits inmates from sealing outgoing correspondence unless it is mailed to a known attorney, certain government agencies, or any state or federal court.

Avery alleges these policies violate the United States Constitution's First, Fifth and Fourteenth Amendments and Part 1, Articles 2, 4, 15 and 22 of the New Hampshire Constitution.

*Discussion*

 In reviewing a *pro se* complaint brought under 42 U.S.C.A. § 1983 (West 1981 & Supp.1992) for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the court construes the complaint liberally. *Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980). The court must take the allegations as true, in the light most favorable to the plaintiff. *Id.* Dismissal is appropriate only if the plaintiff is not entitled to relief under any set of facts he could prove. *Id.*

The Supreme Court recognizes that special rules apply in the prison context, and "[t]raditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration." *Procunier v. Martinez*, 416 U.S. 396, 404, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974), *overruled in part by Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989).[1] The Supreme Court has noted that courts are ill-equipped to handle complicated prison administration matters. *Thornburgh*, 490 U.S. at 407–08, 109 S.Ct. at 1878–79; *Bell v. Wolfish*, 441 U.S. 520, 531, 99 S.Ct. 1861, 1869–70, 60 L.Ed.2d 447 (1979); *Martinez*, 416 U.S. at 405, 94 S.Ct. at 1807.

 Although convicted prisoners do not forfeit all constitutional rights upon conviction, their rights are subject to restrictions and limitations due to the fact of confine-ment and the legitimate goals and policies of the penal institution. *Bell*, 441 U.S. at 545–46, 99 S.Ct. at 1877–78; *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 129, 97 S.Ct. 2532, 2540, 53 L.Ed.2d 629 (1977). "Maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights" of prisoners. *Bell*, 441 U.S. at 546, 99 S.Ct. at 1878.

## I. First Amendment Claim

 The Supreme Court has set down standards for evaluating prison regulations infringing on inmates' rights. *See Thornburgh*, 490 U.S. at 413, 109 S.Ct. at 1881. The legitimate governmental interest in maintaining prison order and security justifies imposing certain restraints on inmate correspondence. *Martinez*, 416 U.S. at 412–13, 94 S.Ct. at 1811. "[E]ven when an institution infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Bell*, 441 U.S. at 547, 99 S.Ct. at 1878. Courts should afford considerable deference to the determinations of prison administrators. *Id.; see also Thornburgh*, 490 U.S. at 407–08, 109 S.Ct. at 1878–79.

 The standard established in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) is to be used to evaluate the constitutionality of prison regulations pertaining to publications sent to prisoners. *Thornburgh*, 490 U.S. at 413, 109 S.Ct. at 1881. Under the *Turner* standard, a prison regulation which impinges on inmates' constitutional rights is valid if it is reasonably related to legitimate penological interests. *Turner*, 482 U.S. at 89, 107 S.Ct. at 2262; *see also Thornburgh*, 490 U.S. at 404, 109 S.Ct. at 1876–77. The Court noted

1. In *Thornburgh v. Abbott*, 490 U.S. 401, 413, 109 S.Ct. 1874, 1881, 104 L.Ed.2d 459 (1989), the Court held that *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) established the standard for regulations affecting outgoing inmate mail, but that *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) established the standard for regulations affecting incoming inmate mail. To the extent that *Martinez* addressed incoming correspondence, *Thornburgh* overruled *Martinez*. *Thornburgh*, 490 U.S. at 413, 109 S.Ct. at 1881; *see also Berdella v. Delo*, 972 F.2d 204, 209 (8th Cir. 1992).

four factors used in determining the reasonableness of a regulation:

> First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it.... Moreover, the governmental objective must be a legitimate and neutral one.... A second factor ... is whether there are alternative means of exercising the right that remain open to prison inmates.... A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally.... Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation.

*Turner*, 482 U.S. at 89–90, 107 S.Ct. at 2262.

The standard enunciated in *Martinez*, 416 U.S. at 413, 94 S.Ct. at 1811, is to be used to evaluate regulations governing outgoing correspondence from prisoners. *Thornburgh*, 490 U.S. at 413, 109 S.Ct. at 1881. Under the *Martinez* standard, a valid prison regulation must further an important or substantial government interest unrelated to the suppression of expression, and the limitation of First Amendment freedoms caused by the regulation must be no greater than is necessary or essential to the protection of the particular governmental interest involved. *Martinez*, 416 U.S. at 413, 94 S.Ct. at 1811.

### A. Greeting card policy

■ The defendants contend that the restriction against receiving greeting cards except from vendors is necessary to ensure proper screening of incoming mail and to maintain prison security. They further note that prisoners are not prohibited from receiving greeting cards altogether, but may receive them if sent directly from vendors in factory sealed packages. Thus, the defendants assert that the regulation has only a *de minimis* effect on inmates.

Applying the *Turner* standard to the policy, the court first determines whether there is a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it, and whether the governmental objective is a neutral one. *Turner*, 482 U.S. at 89–90, 107 S.Ct. at 2262. The defendants have asserted this policy is necessary to prison security. Defendants note greeting cards are often multipart, contained within envelopes, sometimes decorated with metals or flammable substances, and may even produce music or light displays when opened. Greeting cards received from nonvendors would necessitate time-consuming, thorough searches for contraband. Maintaining prison security is clearly a legitimate government objective. *Thornburgh*, 490 U.S. at 415, 109 S.Ct. at 1882. This policy is applied neutrally, without regard to the content of the sought after greeting card. The court finds that there is a rational connection between this policy and the legitimate, neutral objective of maintaining prison security.

The court next examines whether there are alternative means of exercising the right that remain open to prison inmates. In this case, prisoners are not prohibited from possessing or sending greeting cards altogether. They may receive greeting cards directly from vendors as an alternative means of exercising their right to communicate using greeting cards. The court finds there are alternative means available to inmates to exercise the right which is infringed.

Thirdly, the court considers the impact accommodation of the asserted constitutional right would have on guards and other inmates, and on the allocation of prison resources generally. The defendants assert that the regulation is necessary to prevent extensive searches of incoming mail for contraband. The court finds that accommodating inmates' desire to receive greeting cards from nonvendors would unduly burden prison resources by requiring extensive searches of an increased volume of incoming mail from nonvendors. The nature and variety of greeting cards available today would necessitate thorough searches of such mail for contraband.

Finally, Avery has not suggested any alternatives that both fully accommodate inmates' rights and minimally interfere with valid penological interests. The court finds no ready alternative to the challenged policy.

Thus, the court accords deference to the defendants' judgment of which procedures are necessary to maintain prison security, and finds the greeting card policy is reasonably related to the legitimate penological interest of maintaining prison security.

B. Policy and procedure directive 2.5.26 subpart IV(D)

■ In *Bell* the Court upheld as a reasonable prison regulation a "publisher-only rule" which allowed inmates to receive hardcover books only from publishers or book clubs. 441 U.S. at 550, 99 S.Ct. at 1880. The *Bell* Court noted that the regulation operated in a neutral fashion and that there were available alternative means of obtaining reading material that were not shown to be burdensome or insufficient. *Id.* at 551, 99 S.Ct. at 1881. Thus, the regulation at issue in *Bell* was a reasonable time, place and manner regulation necessary to further significant governmental interests. *Id.* at 552, 99 S.Ct. at 1881.

Courts have extended the *Bell* rule to uphold regulations requiring paperback books, magazines and newspapers to be sent directly from the publisher, from book clubs or by direct subscription. *See Ward v. Washtenaw County Sheriff's Dept.*, 881 F.2d 325, 329 (6th Cir.1989); *Kines v. Day*, 754 F.2d 28, 29 (1st Cir.1985). Many of the security risks posed by hardcover books are also applicable to paperbacks. *Ward*, 881 F.2d at 319; *Kines*, 754 F.2d at 30.

The defendants note that screening incoming mail from unrecognized sources is necessary to maintain prison security. Applying the first *Turner* factor to PPD 2.5.26 IV(D), the court is of the opinion that there is a rational connection between the regulation and the legitimate governmental interest put forward to justify it, namely maintaining prison security. The court finds the regulation operates in a neutral fashion, requiring books to be sent directly

from the publisher regardless of their content. Considering the second *Turner* factor, the court finds there are alternative means of exercising the right that remain open to prison inmates because they may receive these publications directly from the publishers.

Thirdly, the court considers the impact accommodation of the asserted constitutional right would have on guards and other inmates, and on the allocation of prison resources generally. In this case, the court finds allowing prisoners to receive these materials from any source would unduly strain limited prison resources by requiring extensive searches of incoming mail.

Finally, the court notes Avery has not put forth alternative means which accommodate inmates' rights without unduly impinging on prison security. The court finds no readily available alternatives with lesser impact on inmates.

In light of the deference accorded prison administrators pursuant to *Bell*, the court finds PPD 2.5.26 IV(D) is reasonably related to the legitimate penological interest of maintaining internal prison security.

C. Policy and procedure directive 2.5.26 subpart IV(F)

■ The court next applies the *Martinez* standard to the regulation prohibiting inmates from sealing outgoing correspondence not addressed to a recognized attorney, certain government agencies, or to a court. Under *Martinez*, a valid prison regulation must further an important or substantial government interest unrelated to the suppression of expression. 416 U.S. at 413, 94 S.Ct. at 1811.

■ Prison officials do not necessarily violate the constitution when they read inmates' outgoing correspondence because of their reasonable concern for prison security and inmates' diminished expectations of privacy. *United States v. Whalen*, 940 F.2d 1027, 1035 (7th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 403, 116 L.Ed.2d 352 (1991); *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir.1986); *Minnesota Civil Liberties Union v. Schoen*, 448 F.Supp. 960,

964 (D.Minn.1977). "It is well established that prisons have sound reasons for reading the outgoing mail of their inmates." *Whalen,* 940 F.2d at 1035. Regulations subjecting inmates' outgoing mail to inspection further the important government interests in maintaining prison order and preventing criminal activity. *Id.*

*Martinez* further requires that the limitation of First Amendment freedoms caused by the regulation must be no greater than is necessary or essential to protect the particular governmental interest involved. 416 U.S. at 413, 94 S.Ct. at 1811. In this case, the regulation exempts legal correspondence. The court finds it is sufficiently tailored to avoid unnecessary infringement on inmates' First Amendment rights.

Thus, the court finds PPD 2.5.26 IV(F) furthers the important government interests in maintaining order in prison and preventing criminal activity, and limits First Amendment freedoms no more than necessary to protect that interest.

## II. Federal Due Process Claim

■ Avery alleges the policies analyzed above infringe his Fifth and Fourteenth Amendment due process rights.[2] When defendants rejected the greeting card sent to Avery, they notified him of the decision. Avery then submitted an "inmate request slip" requesting that he be allowed to receive the greeting card. Cunningham responded by referring Avery to the letter instituting the policy against receiving blank greeting cards from nonvendors. The defendants requested Avery's sister's address to return the greeting card to its sender.

"[T]he fact that prisoners retain rights under the Due Process clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). Courts analyzing prison regulations concerning incoming mail use the

*Turner* standard to determine whether the regulation violates an inmates' due process rights. *See Bell,* 441 U.S. at 554, 99 S.Ct. at 1882 (upholding prison regulation prohibiting inmates from receiving packages except one at Christmas); *Holloway v. Pigman,* 884 F.2d 365, 366–67 (8th Cir.1989) (upholding procedure requiring prison administrators to notify inmates when mail violating departmental policy was rejected, and requiring mail to be returned to sender); *Jackson v. Elrod,* 881 F.2d 441, 442, 443 (7th Cir.1989) (upholding procedure requiring prison administrators to notify inmates when books sent to inmates had been rejected, and allowing inmates the opportunity to object).

The court finds the challenged procedures are reasonably related to the legitimate penological interest of maintaining prison security and order, and the policy of notifying inmates when mail violating prison policy is received and returning the mail to its sender is sufficient to satisfy the Fourteenth Amendment's due process requirements.

## III. State Constitutional claims

■ Avery alleges the policies analyzed above violate the New Hampshire Constitution, Part 1, Articles 2, 4, 15 and 22.

Because the court dismisses the federal claims alleged by Avery, it must balance judicial economy, convenience, fairness to the litigants, and comity in deciding whether to exercise supplemental jurisdiction over the remaining state law claims. *Newman v. Burgin,* 930 F.2d 955, 963 (1st Cir.1991). "[W]hen a district court dismisses all federal claims before trial, it normally will dismiss pendent state actions as well." *Id.* at 964. In this case the action complained of, to the extent it is actionable, is viable under state law. Considerations of judicial economy and comity weigh against this court exercising supplemental jurisdiction over the remaining claims arising under the state constitution.

---

**2.** The court notes that Avery's complaint alleges no misconduct by the federal government, and

thus the Fifth Amendment due process clause is inapplicable. U.S. Const. amend. V.

The court therefore declines to exercise supplemental jurisdiction over Avery's state law claims.

*Summary*

Viewing the complaint in the light most favorable to the plaintiff, the court finds that it fails to state federal constitutional infringements entitling plaintiff to relief. The court declines to exercise supplemental jurisdiction over plaintiff's state law claims. Thus, the court grants defendants' motion to dismiss (document no. 11).

SO ORDERED.