Edward ENNIS, Plaintiff and Appellant,

v.

Judy BERG, Property Officer, North Dakota State Penitentiary; Cordell Stromme, Security Chief, North Dakota State Penitentiary; Timothy Schuetzle, Warden, North Dakota State Penitentiary; Elaine Little, Director, Department of Corrections and Rehabilitation State of North Dakota; and other unknown parties; individually and in their official capacities, Defendants and Appellees,

Joel Zahn, Inmate Supervisor, North Dakota State Penitentiary, Defendant.

Civ. No. 930076.

Supreme Court of North Dakota.

Dec. 2, 1993.

Edward Ennis, pro se.

Douglas A. Bahr, Asst. Atty. Gen., Atty. Gen.'s Office, Bismarck, for defendants and appellees.

SANDSTROM, Justice.

Edward Ennis, an inmate at the North Dakota State Penitentiary, is unhappy with prison rules and practices. He sued claiming violation of his civil rights. The district court granted summary judgment against Ennis. He appeals. We affirm the district court judgment.

Ennis claims prison officials wrongly denied him his Christmas "care package." Ennis's package was not received until January, beyond the time permitted. The prison fairly applied its reasonable rule.

Ennis objects to the prison's general policy of allowing inmates only to receive tape recordings directly from publishers, and to the exception for religious tapes. The prison fairly applied its reasonable general rule. The exception properly recognizes reasonable accommodation of inmate religious freedom under the First Amendment.

Ennis's objection to inmate security personnel was unsupported by competent evidence.

Ennis's claims are without merit. Summary judgment was properly granted.

I

Ennis claims on December 9, 1991, and on March 9, 1992, he was denied audio cassette tapes which had been mailed to him. Under the penitentiary's publisher-only policy, inmates can only receive tapes mailed directly from publishers. The penitentiary allows an unwritten exception for religious tapes. Religious tapes are allowed if sent from a religious source, even if not a publisher, but only after inspection and screening by prison officials. Ennis does not claim his tapes were religious.

Ennis also claims that on January 9, 1992, he was denied a care package of magazines, books, and boxed candy. Under the prison's 1991 Christmas care-package policy, each inmate was allowed one care package sent into the prison by either United States mail, or United Parcel Service. The package had to be received between December 1 and 31, 1991. The defendants say Ennis's package was not allowed because it was received after December 31, 1991, and because it contained homemade, unsealed food items, magazines and newspapers which did not comply with the Christmas care-package policy. Ennis does not contend his package met the requirements of the policy.

Ennis, acting pro se, filed a verified complaint with the Burleigh County District Court challenging the penitentiary's publisher-only and care-package policies, seeking declaratory and injunctive relief, and monetary damages. Ennis claims both policies violate his constitutional right to free speech and deprived him of property in violation of his right to due process. He also alleges the defendants wrongfully violated his rights by arbitrarily denying him indigent mailing supplies, by using penitentiary inmates as prison security personnel, and by threatening reprisal for his actions to protect his rights.

The defendants moved to dismiss the complaint, contending Ennis had failed to allege sufficient facts to support his claims for relief. Ennis resisted the motion to dismiss and moved for the appointment of counsel to assist him in the preparation of his case.

The district court denied Ennis's motion for counsel and partially granted the defendants' motion to dismiss. The district court, based solely on Ennis's complaint, concluded:

(1) The doctrine of sovereign immunity barred suit against the state or state officials acting in their official capacities.

(2) State officials could be held personally liable for money damages if they "took an action with the malicious intention to cause a deprivation of constitutional rights or other injury."

(3) The publisher-only rule for cassette tapes is valid.

(4) The Christmas care-package policy is valid.

(5) There were factual issues whether the defendants could establish the publisher distinction was in force when Ennis's tapes were denied, and whether the defendants were evenhandedly allowing religious tapes but not others.

(6) Possible fact issues existed whether the defendants were using penitentiary inmates as guards and whether the de-

fendants retaliated against Ennis for attempting to vindicate his rights.

The defendants moved for summary judgment on the remaining issues. The defendants submitted copies of the penitentiary policies and affidavits. The Attorney General moved to withdraw as counsel for defendant Joel Zahn, an inmate at the penitentiary, because Zahn was not a state employee. Ennis resisted the defendants' motion for summary judgment, arguing the motion should be denied, or the proceedings stayed pending discovery.

The district court granted the Attorney General's motion to withdraw, but denied the motion for summary judgment as premature because discovery had not been conducted. The court gave Ennis sixty days to complete discovery.

On December 14, 1992, the district court sent a letter to Ennis warning:

"In my Order of October 12 I gave you 60 days in which to complete any further discovery. I now expect that you will, within 10 days from the date of this letter, submit any further information you may have obtained in order to complete your response to the state's motion for summary judgment."

Ennis responded to the court's letter, but submitted no evidence to support his claims. On December 29, 1992, the district court dismissed Ennis's complaint. The court explained:

"Considering the record as it now exists, (over 120 filings) my conclusion is that the undisputed facts establish that the defendants have neither collectively nor individually denied to plaintiff any of the civil rights which he has retained and which are relevant to this proceeding."

Ennis appeals the district court's entry of summary judgment.

## II

Ennis contends the district court erred in upholding the penitentiary's publisher-only cassette tape policy. The policy provides:

"Cassette tapes, CD's [sic], records may be sent into the institution directly from the publisher, by the inmate making the trans-

action with a transfer or downtown order. Sealed tapes sent in other than from the publisher will be sent out of the institution at the inmate's expense."

We are guided by the analytical framework developed by the United States Supreme Court in *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987):

"Several general principles guide our consideration of the issues presented here. First, 'convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison.' Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. Second, '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security.

"In considering the appropriate balance of these factors, we have often said that evaluation of penological objectives is committed to the considered judgment of prison administrators, ... To ensure that courts afford appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.... '[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.' This approach ensures the ability of corrections officials 'to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration....'"

*O'Lone* 482 U.S. at 448–49, 107 S.Ct. at 2500–01 (citations omitted).

We find no case directly addressing a publisher-only rule for cassette tapes. Publisher-only rules, however, have been upheld in similar contexts. In *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the United States Supreme Court upheld a restriction prohibiting prisoners from receiving books from outside the institution unless the books were mailed directly from a publisher or a book club. The Court concluded:

> "[a] prohibition against receipt of hardback books unless mailed directly from publishers, book clubs, or bookstores does not violate the First Amendment rights of MCC inmates. That limited restriction is a rational response by prison officials to an obvious security problem. It hardly needs to be emphasized that hardback books are especially serviceable for smuggling contraband into an institution. . . .

> " . . . The rule operates in a neutral fashion, without regard to the content of the expression. And there are alternative means of obtaining reading material that have not been shown to be burdensome or insufficient."

*Wolfish* 441 U.S. at 550–51, 99 S.Ct. at 1880–81 (citations omitted).

Similarly, publisher-only restrictions have been upheld for soft cover books, *see Johnson v. Moore,* 948 F.2d 517, 520 (9th Cir. 1991); periodicals, *see Kines v. Day,* 754 F.2d 28, 29–30 (1st Cir.1985); and for greeting cards, *see Avery v. Powell,* 806 F.Supp. 7, 11 (D.N.H.1992).

■ The penitentiary's publisher-only rule for cassette tapes is valid. The restriction does not completely limit access to taped materials, and represents a reasonable effort to maintain prison security. Tapes, like books and magazines, can be used to smuggle contraband and to send information detrimental to institutional security.

■ Ennis contends the unwritten religious exception to the publisher-only rule deprives him of his right to freedom of religion, and denies him equal protection. Ennis does not claim he was denied religious tapes, only that others were permitted to receive religious tapes from sources other than publishers and this exception possibly could be arbitrarily applied. Allowing others to receive non-publisher religious tapes, while not denying Ennis the right to receive them, fails to raise a legitimate freedom of religion claim on Ennis's part. In addition, Ennis has not demonstrated any close relationship with hypothetical third parties or that any third party would be adversely affected by the outcome of this case. *See State v. Tibor,* 373 N.W.2d 877, 881 (N.D.1985). Ennis, however, may challenge the religious exception based on a violation of his right to equal protection.

■ For the religious exception to be valid, the defendants must have a legitimate prison interest for favoring non-publisher sent religious tapes over non-publisher sent non-religious tapes. The defendants argue the purpose of the religious exception is to allow inmates to pursue their right of freedom of religion to the greatest extent possible, while at the same time protecting prison security.

We hold the religious exception is reasonably related to a valid prison interest. Inmates retain First Amendment protections, including the right to religious freedom. *See Estate of Shabazz,* 482 U.S. at 348, 107 S.Ct. at 2404. The exception for religious tapes strikes a reasonable compromise between a prisoner's fundamental right to practice religion, and the penitentiary's valid security concerns. *Cf. Cotton v. Lockhart,* 620 F.2d 670 (8th Cir.1980) (upholding publisher-only rule for magazines, newspapers, books, with a limited religious exception).

### III

Ennis challenges the district court's entry of summary judgment, claiming his verified complaint raises fact issues that should have been resolved by jury.

As we explained in *First Nat. Bank of Hettinger v. Clark,* 332 N.W.2d 264 (N.D. 1983):

> "A party resisting a motion for summary judgment has the responsibility of presenting competent admissible evidence by affidavit or other comparable means, and, if appropriate, drawing the court's attention to evidence in the record by setting out the

page and line in depositions or other comparable document containing testimony or evidence raising a material factual issue, or from which the court may draw an inference creating a material factual issue.

"... [T]he trial court has no legal obligation, judicial duty, or responsibility to search the record for evidence opposing the motion for summary judgment."

*Clark* at 267 (citations omitted).

■ Ennis failed to present competent admissible evidence to resist the evidence presented by the defendants. Ennis claims his verified complaint qualifies as competent evidence creating an issue of material fact. *See Remmick v. Mills,* 165 N.W.2d 61, 67 (N.D. 1969). This argument is unpersuasive. Ennis failed to draw the district court's attention to his reliance on his verified complaint. Absent notice by Ennis, the court was under no duty to search the record for evidence opposing the motion for summary judgment.

■ Additionally, Ennis's verified complaint fails to create a material fact issue. Ennis relies on his complaint's conclusory statements, which are not competent to create fact issues. *State Bank of Kenmare v. Lindberg,* 471 N.W.2d 470, 476 (N.D.1991).

Given Ennis's failure to conduct discovery, having been given the opportunity to do so, his failure to draw the district court's attention to facts he believed were at issue, and the conclusory nature of his verified complaint, summary judgment was appropriate.

### IV

Ennis claims the district court abused its discretion denying his motion for the appointment of counsel. The district court concluded:

"The question of appointment of counsel has been visited before in this and related proceedings. Suffice it to say that I have no authority to appoint counsel in this proceeding and even if I did the circumstances in this case are not such as would justify it. The facts involved are not complex and while the law may be complex, it is apparent from the file and the pleadings and briefs filed by the plaintiff that either (1) he is perfectly competent to address both the legal and factual issues involved or (2) he is, in fact, receiving the aid of counsel sub rosa."

■ The district court properly concluded appointment of counsel was not warranted in this case. Given Ennis's legal ability, we do not believe his rights have been adversely affected by his failure to secure counsel. *See Ennis v. Schuetzle,* 488 N.W.2d 867, 869 (N.D.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 626, 121 L.Ed.2d 558 (1992); *Ennis v. Dasovick,* 506 N.W.2d 386, 393 (N.D.1993).

### V

Ennis claims the district court abused its discretion by denying his petitions for writs of habeas corpus ad testificandum. The petitions requested the court order Warden Schuetzle to transport Ennis and inmate Herbert Jensen to the Burleigh County courthouse to attend a hearing scheduled by Ennis. Ennis scheduled the hearing to present testimony, and provide the court with oral argument on his various motions.[1] Warden Schuetzle refused to transport Ennis and Jensen to the courthouse unless requested by the court.

■ Rule 3.2, N.D.R.O.C, provides, in part:

"(a) *Submission of motion.* Upon serving and filing a motion, or within 5 days thereafter, the moving party shall serve and file a brief and other supporting papers and the adverse party shall have 10 days after service of a brief within which to serve and file an answer brief and other supporting papers. Upon the filing of briefs, or upon expiration of the time for filing, the motion is deemed submitted to the Court unless counsel for any party requests oral argument on the motion. *If any party who has timely served and filed a brief requests oral argument, the request must be granted.* The party requesting oral argument must secure a time for the

---

1. Ennis requested oral arguments for the following motions: (1) 8–24–92 motion for sanctions; (2) 8–24–92 motion to vacate order denying appointment of counsel; (3) 9–23–92 motion for sanctions; (4) 9–23–92 motion to strike; and (5) 11–17–92 motion to certify question.

argument and serve notice upon all other parties. The court may hear oral argument on any motion by telephonic conference. *The court may . . . allow or require testimony on the motion.*" (Emphasis added.)

Under Rule 3.2, a hearing must be held when a party who has timely served and filed a brief requests one for providing oral argument on a motion. *See Anton v. Anton,* 442 N.W.2d 445, 446 (N.D.1989). Whether testimony is allowed on a motion, however, is within the sound discretion of the court.

Under Rule 3.2, N.D.R.O.C., Ennis was entitled to a hearing to offer oral argument on his various motions. Nothing in Rule 3.2, however, requires the hearing be conducted at the courthouse. Rule 3.2 specifically provides such hearings can be held by telephone conference. The record indicates the defendants agreed to a telephone hearing. Ennis refused.

Ennis waived his right to a hearing when he refused the telephone conference.

### VI

We have considered the remaining issues raised by Ennis and find them to be without merit. The judgment of the district court is affirmed.

VANDE WALLE, C.J., and MESCHKE, NEUMANN and LEVINE, JJ., concur.