**Jerry R. SKELTON, Plaintiff–Appellant,**

v.

**PRI–COR, INC., Defendant–Appellee.**

No. 90–5290.

United States Court of Appeals, Sixth Circuit.

Argued July 30, 1991.

Decided Nov. 21, 1991.*

Jerry R. Skelton, pro se.

Robert G. Leger, Jonesborough, Tenn. (argued & briefed), for plaintiff-appellant.

Before: KENNEDY and JONES, Circuit Judges; and GIBSON, Chief District Judge.**

PER CURIAM.

Plaintiff-appellant Jerry R. Skelton appeals the district court's grant of summary judgment to Pri–Cor, Inc., dismissing his 42 U.S.C. § 1983 prisoner civil rights action. For the following reasons, we affirm the judgment of the district court.

* This decision was originally issued as an "unpublished decision" filed on November 21, 1991. On April 17, 1992, the court designated the opinion as one recommended for full-text publication.

** The Honorable Benjamin F. Gibson, Chief United States District Judge for the Western District of Michigan, sitting by designation.

## I.

On June 15, 1989, Skelton pled guilty in the United States District Court for the Eastern District of Tennessee to a charge of escaping federal custody and was incarcerated at the Greene County Detention Center ("the Center") while awaiting sentencing. Pri–Cor, Inc. ("Pri–Cor") is a private corporation which operates the Center pursuant to a contract with Greene County, Tennessee.

On August 28, 1989, Skelton filed this suit against Pri–Cor under 42 U.S.C. § 1983. Later, the district court ordered him to amend his *pro se* complaint to plead his claims with more specificity. On September 11, 1989, Skelton amended his complaint and alleged that Pri–Cor had violated his constitutional rights by denying him access to the law library at the Greene County Detention Center.

On September 26, 1989, Skelton filed a second civil rights complaint against Pri–Cor. In his second complaint, Skelton alleged that Pri–Cor personnel had violated his constitutional rights by returning to the publisher a hardbound Bible addressed to him and by opening and reading his legal mail.[1] The district court consolidated these actions.

On December 29, 1989, Pri–Cor filed a motion to dismiss or for summary judgment on the pleadings. The district court treated Pri–Cor's motion as a motion for summary judgment and granted the motion on February 2, 1990. This appeal followed. The issues raised on appeal are: (1) whether the district court erred in granting summary judgment on Skelton's claim that Pri–Cor violated his first and eighth amendment rights by refusing to allow him to receive the hardbound Bible; and (2) whether the district court erred in granting summary judgment on Skelton's claim that Pri–Cor violated his rights by denying him access to the law library.

## II.

Initially, we must address Pri–Cor's arguments concerning its potential liability under § 1983. In a rather conclusory fashion, Pri–Cor contends that, as a private corporation, it cannot be held liable under § 1983 because respondeat superior does not apply in § 1983 actions. This argument contains two components. First, Pri–Cor argues that the corporation cannot be held liable for the unconstitutional acts of its employees unless it is shown they are following an official policy or custom of the corporation. Pri–Cor asserts that Skelton has failed to allege a policy for which the corporate entity would be liable. While *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), is probably dispositive of this issue, we decline to address it here since we find that no constitutional violation has been committed by Pri–Cor's employees.

Second, Pri–Cor argues that "Skelton has cited no case in which a court has determined that a private corporation which administers a state corrections facility pursuant to a private contract with a local governing body acts under color of state law within the meaning of section 1983." Appellee's Brief at 35. Skelton maintains that "when officials or employees of an entity carry out *official policy* or when the entity delegates to officials the responsibility of creating official policy, then entity liability will lie in a § 1983 action." Appellant's Brief at 34 (emphasis in original). The affidavit of Mr. Young acknowledges that Pri–Cor officials were acting pursuant to some policy or custom. Skelton concedes that respondeat superior alone cannot create liability under § 1983. *Monell v. New York City Dept. of Soc. Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). If governmental entities are acting pursuant to a policy or custom, however, a suit under § 1983 will lie. *Monell*, 436 U.S. at 690–91, 98 S.Ct. at 2035–36.

"[T]he question whether particular conduct is 'private,' on the one hand, or 'state action,' on the other, frequently admits of

---

1. Skelton does not appeal the district court's judgment as it relates to his claim concerning the opening of his legal mail.

no easy answer." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349–50, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). "To act 'under color' of law does not require that the accused be an officer of the State." *Adickes v. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970). As a detention center, Pri–Cor is no doubt performing a public function traditionally reserved to the state. *See Evans v. Newton*, 382 U.S. 296, 299, 86 S.Ct. 486, 488, 15 L.Ed.2d 373 (1966) ("[W]hen private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations."); *Terry v. Adams*, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946). Surely it can be said that the power exercised by Pri–Cor is " 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)).

Although the precise question raised by Pri–Cor has not been directly addressed by the Supreme Court, several of the Court's decisions suggest that under the facts before us Pri–Cor acted under color of law for purposes of § 1983. *See, e.g., West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 2258, 101 L.Ed.2d 40 (1988) (private physician contracted by the state to provide medical services to inmates acts under color of law when treating inmates). *See also* Annotation, *Supreme Court's Views As To When Person Is Acting "Under Color Of" State Law, Within Meaning Of Civil Rights Statute (42 U.S.C. § 1983) Providing Private Right Of Action For Violation Of Federal Rights*, 101 L.Ed.2d 987 (1990).

On the whole, we think that Pri–Cor's actions can be "fairly attribut[ed] to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). "[T]here is a sufficiently close nexus between the State and the challenged action of [Pri–Cor] so that

the action of the latter may be fairly treated as that of the State itself." *Jackson*, 419 U.S. at 351, 95 S.Ct. at 453. *See also Plain v. Flicker*, 645 F.Supp. 898, 907 (D.N.J.1986) ("[I]f a state contracted with a private corporation to run its prisons it would no doubt subject the private prison employees to § 1983 suits under the public function doctrine."); *Davenport v. Saint Mary Hosp.*, 633 F.Supp. 1228, 1234–35 (E.D.Pa.1986) (if state delegates traditional public functions, a sufficiently close nexus is present between the state and the challenged conduct of the private entity). Therefore, for the purposes of this appeal, we conclude that Pri–Cor was acting under color of law.

## III.

The primary issue on appeal is whether the district court erred in granting Pri–Cor summary judgment on Skelton's claim that the Center violated his first and eighth amendment rights when it refused him delivery of a hardbound Bible. We think not.

Citing *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the district court held that

the defendant's refusal to permit the plaintiff to possess a hard-bound Bible was a reasonable exercise of the wide-ranging discretion of prison administrators to establish policies and procedures to promote order and security within a prison inasmuch as a hard-bound book may be used as a weapon whatever its contents may be.

J.App. at 8.

In *Bell* the Supreme Court upheld the so-called publishers only rule, which as a security measure prohibited prisoners from receiving hardback books from persons other than publishers, bookstores, or book clubs. 441 U.S. at 550, 99 S.Ct. at 1880. In upholding this rule, the Court acknowledged that "hardback books are especially serviceable for smuggling contraband into an institution; money, drugs, and weapons easily may be secreted in the bindings. They also are difficult to search effective-

ly." *Id.* at 551, 99 S.Ct. at 1880 (citation omitted). The Court recognized that prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 547, 99 S.Ct. at 1878. We note, however, that in *Bell* the Court did not address the use of hardbound books as potential weapons.

In *Ward v. Washtenaw Cty Sheriff's Dept.*, 881 F.2d 325 (6th Cir.1989), the court held that a prison policy which extended the publishers only rule to magazines was not unconstitutional. The court concluded that "defendants' regulations are reasonably related to legitimate penological interests[.]" *Id.* at 330. While *Ward* does not directly control the present case, it suggests that this circuit is not necessarily opposed to prison restrictions which exceed the holding in *Bell.*

Skelton relies heavily upon *Jackson v. Elrod*, 881 F.2d 441 (7th Cir.1989), where the court held, in addressing the question of qualified immunity, that a blanket prohibition against hardcover books was unconstitutional. The inmate in *Jackson*, a chronic alcoholic, was attempting to gain information on alcoholism. Prison officials returned to the sender several books on alcoholism that the inmate had ordered, both hardcover and softcover. *Jackson* is not on all fours with the present case because: (1) in *Jackson* the inmate was refused hardcover as well as softcover materials; and (2) the inmate in *Jackson* was refused access to the library which apparently contained alcoholism materials. Thus, unlike Skelton, in *Jackson* the inmate had no alternative means of obtaining the reading materials sought. Not only was the inmate in *Jackson* refused softcover materials, but most of the materials he sought were not available in softcover.

██ Moreover, unlike *Jackson*, this case does not involve a general attack against the Center's policy regarding books. The sole issue before us is whether the Center violated Skelton's constitutional rights by not allowing him to receive a hardbound Bible. In considering a challenge to a prison policy as applied, the proper inquiry is whether the actions of the prison officials are reasonably related to legitimate penological interests. *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 1876, 104 L.Ed.2d 459 (1989). Further, the Supreme Court has recently stated clearly that "[w]here the regulations at issue concern the entry of materials into the prison, ... a regulation which gives prison authorities broad discretion is appropriate". *Thornburgh,* 109 S.Ct. at 1883. We find that the disallowance of Skelton's hardcover Bible involved the entry of materials into the prison and was related to security.

Tony R. Young, former administrator of the Greene County Detention Center during the incident at issue, testified that the Center

had a policy that residents of that facility were not allowed to have hard-covered books. This policy was based on security reasons, as a resident could potentially use a hard-covered book as a weapon of assault. Also, a resident could potentially 'carve out' a hard-covered book in order to hide contraband such as weapons, drugs, and money.

J.App. at 31–32 (affidavit of Tony R. Young). Although not allowed to have the hardcover Bible, Skelton would have been allowed to have a softcover Bible. *See Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 2262, 96 L.Ed.2d 64 (1987) (factor to consider in determining the reasonableness of the regulation is "whether there are alternative means of exercising the right that remain open to prison inmates").

The Center's decision to refuse Skelton delivery of the hardcover Bible was reasonably related to legitimate penological interests. The determinative factor in the case before us is that the Center would allow Skelton to have a softcover Bible. *See Thornburgh, supra.* On the facts before us, we conclude that Center officials did not violate Skelton's constitutional rights by refusing him a hardcover Bible. *See Tate v. Lewis,* No. 86–14, 1986 WL 12687 (E.D.La. Oct. 29, 1986) ("We do not find that a decision to exclude hardcover books

to be unreasonable. It is conceivable that hardback books, whether in a prison environment or otherwise, could be used as a 'weapon' to cause injury to another.'").

## IV.

■ The next issue is whether the district court erred in granting summary judgment on Skelton's claim that Pri–Cor violated his constitutional rights by denying him access to the law library. We think not.

Citing *Walker v. Mintzes*, 771 F.2d 920 (6th Cir.1985), the district court concluded that

> the denial of plaintiff's access to a law library on one occasion on July 18, 1989, as alleged by the plaintiff in his pretrial narrative ..., fails to arise to the level of denial of his access to the Courts as a matter of law.

J.App. at 7.

According to Young, residents at the Center were permitted to use various law books and other law library documents. The policy was as follows:

> In order to be taken to the library area of the Greene County Detention Center, the resident would have to complete a resident request form and then await his turn to be taken to the library area. Due to the number of residents requesting access to the library area, a resident could not always be taken to the library area at the very moment of his request, as the request would require processing and security personnel could only supervise and guard one or two residents at a time during their visits to the library area.

J.App. at 32 (affidavit of Tony R. Young). Young testified that "I am unaware of any instances where residents were not taken to the library facility any later than three days after a proper request was made to be taken to the library area." *Id.*

Skelton alleged in his complaint that Pri–Cor officials denied him access to the law library at the Center on July 18, 1989. He complains because he was not taken immediately to the library upon request. Although he was denied "immediate" access to the library, Skelton was told that he needed to fill out a request form in order to gain access to the law library. He does not allege that he was refused access after completing a request form.

In *Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977), the Supreme Court held that "inmate access to the courts [must be] adequate, effective, and meaningful." However, in *Bounds* the Supreme Court did not establish a general constitutional right to some minimum amount of time in the prison law library. *Walker*, 771 F.2d at 932. Moreover,

> 'prison regulations which reasonably limit the times, places, and manner in which inmates may engage in legal research and preparation of legal papers do not transgress the constitutionally protected rights so long as the regulations do not frustrate access to the courts.'

*Id.* (quoting *Twyman v. Crisp*, 584 F.2d 352 (10th Cir.1978)).

The Center's law library policy is reasonably related to a legitimate penological interest—security. Furthermore, the policy does not completely foreclose an inmate's access to the library. We also note that at the time in question, Skelton was represented by legal counsel. *See Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir.1983) (once counsel appointed, state has fulfilled constitutional obligation to provide full access to courts).

We conclude that Skelton's right to access to the courts was not violated.[2]

## V.

Accordingly, we AFFIRM the judgment of the district court.

---

**2.** On appeal, Skelton raises certain issues and facts which he did not raise in the court below. These "new" issues and facts include, among other things, the inadequacy of the law library and the claim that he was denied access on more than one occasion. Generally, this court will not consider matters for the first time on appeal. Although we may by discretion consider new constitutional issues, the record does not warrant such an approach here.