April 23, 1993
 [NOT FOR PUBLICATION]

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 

No. 92-1822 

 RICHARD A. STREET,

 Plaintiff, Appellant,

 v.

 MICHAEL T. MALONEY, ET AL.,

 Defendants, Appellees.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Edward F. Harrington, U.S. District Judge]
 

 

 Before

 Breyer, Chief Judge,
 
 Selya and Cyr, Circuit Judges.
 

 

Richard A. Street on brief pro se.
 
Irene M. Carr, Counsel, Department of Correction, and Nancy
 
Ankers White, Special Assistant Attorney General, on brief for
 
appellees.

 

 

 Per Curiam. Plaintiff-appellant Richard A. Street,
 

a Massachusetts prison inmate, appeals the grant of summary

judgment in favor of defendant correctional officials.

Summary judgment was entered by the district court after this

court upheld the dismissal of certain claims but reversed the

dismissal of plaintiff's free exercise and equal protection

claims. Street v. Maloney, No. 90-1280, slip op. (Dec. 29,
 

1990). For the reasons that follow, we vacate and remand.

 I
 

 Street is an adherent of a sect of the Hindu

religion commonly known as Hare Krishna. He initiated this

action under 42 U.S.C. 1983 after prayer beads and a

religious necklace that he had ordered in 1988 were

confiscated by prison officials. At the time, Street was

confined to the Departmental Segregation Unit (DSU), the

prison's highest security unit. His amended complaint

charged that defendants Smith, the prison property officer,

Captain Gallagher, then administrator of the DSU, Maloney and

Raikey, former and present prison superintendents, and Hall,

a former deputy superintendent, were responsible, in their

individual and official capacities, for the expropriation.

The core of Street's complaint is that the defendants

infringed his First and Fourteenth Amendment rights to free

exercise of religion and equal protection of the laws by

confiscating the prayer beads and religious necklace while at

the same time allowing Roman Catholic inmates to possess

rosary beads and wear crucifixes.1

 On remand, the defendants moved for summary

judgment. They argued that 1) the confiscation of the

plaintiff's prayer beads was justified because of their

"great potential as a dangerous weapon," 2) the unusual

security risks posed by the prayer beads constituted a

rational basis for any difference in treatment between the

plaintiff and Catholic inmates, 3) the claims against Captain

Gallagher should be dismissed under Fed. R. Civ. P. 4(j)

because of failure to effect service of process, and 4) the

claims against the remaining defendants should be dismissed

because of plaintiff's failure to individuate the claims,

that is, to allege facts showing which defendants performed

the acts that purportedly impaired his constitutional rights.

 Defendants' motion was supported by Smith's two-

page affidavit. As the prison property officer, Smith was

 

1. Plaintiff's amended complaint also alleged that the
confiscation was in contravention of the Fourth Amendment
right to be free of unreasonable seizures and the Fourteenth
Amendment right to due process, and that the processing of
the incoming religious items violated institutional
regulations regarding inmate mail. Defendants here assert
that only plaintiff's free exercise/equal protection claims
survive our prior ruling in this case. We reject that
contention. Our prior opinion explained that because
plaintiff's amended complaint was not in the record, we would
not presume that it was before the district court and,
consequently, we would not address the allegations therein.
Thus, plaintiff remained free to pursue the above-mentioned
claims on remand.

 -3-

responsible for handling all incoming property, maintaining

records of cell contents and contraband, and transferring

property to other institutions. Smith recalled that

plaintiff's prayer beads consisted of "approximately 100

beads strung together on a strong cord and joined to form a

circle which measured approximately 36 inches, doubled." The

beads, he attested, "were a solid, hard material" and "were

large, approximately 3/4 inch in diameter." The prayer beads

"did not resemble in any way the rosary beads which are

allowed inside the institution. The rosary beads that are

allowed . . . generally consist of very small hollow plastic

beads joined on a weak chain with small, easily breakable

links." Based on his experience, Smith felt that plaintiff's

prayer beads "posed a security risk to the institution

because of their potential use as weapons such as a `sap',

`numchucks', or as a `garotte'."2 Finally, Smith affirmed

that DSU inmates "have been placed there as a result of the

most serious rules violations, involving violent and

extremely disruptive behavior," and that "the DSU

administrator and the officer in charge of the West Wing

Segregation Unit also saw the beads and determined that they

 

2. According to Smith, a "sap" consists of a sock or
similar container into which hard objects are placed, and
which is used to inflict blows; "numchucks" are sets of
batons connected by a length of cable or chain, used for a
similar purpose; a "garrotte" is a cord, thong, or length of
wire, used to strangle a victim.

 -4-

must be removed because of the serious security concerns they

posed." The affidavit identified neither of the other two

officers by name.

 Plaintiff's opposition contested the rationality of

the defendants' asserted security justification. In an

accompanying affidavit, Street stated that the 108 knotted

beads were 1/2 inch in diameter and made of very light-

weight, easily breakable wood, similar to balsa wood. "The

beads are not solid, but are hollow, like Catholic rosary

beads, with a hole in the center so they can be strung on a

string." The string, about 36 inches long and 1/64 inch

around, was asserted to be very weak and easily broken. The

religious necklace was described as 18 inches long consisting

of 54 tiny wooden beads (3/16 inch long and 1/8 inch in

diameter) strung on a "thin weak string" which a young child

could "easily break."

 With respect to his religion, Street's affidavit

explained that his faith required 1728 repetitions of a

particular mantra daily, using special prayer beads. The

plaintiff claimed that "[w]ithout said beads it is not

possible for me to obey this commandment of my religion."

Street maintained that he had been allowed prayer beads

during a 1985 confinement in the DSU, and that after his

return there in June 1988 he received permission from Hall to

order the beads. When they arrived, however, Captain

 -5-

Gallagher refused to allow him to have them. Street

protested to Hall, and to Hall's superiors, Raikey and

Maloney, about the confiscation, but they refused to

intervene. Street declared that neither he nor the sender

received the required notice that the beads were considered

contraband. Finally, Street's affidavit asserted that his

jailers said to him that "the Hare Krishnas are fools and

worship a false God."

 The district court granted the defendants' motion

for summary judgment. The court's order states in its

entirety:

 Motion allowed. Alleged refusal to permit inmate
 to possess hare krishna [sic] beads and necklace in
 the Departmental Segregation Unit is not violative
 of Plaintiff's Constitutional rights, as such
 refusal is reasonably related to legitimate
 penological interests. Turner v. Safley, 482 U.S.
 
 78, 85 (1987).

The standard of review is familiar, see, e.g., Garside v.
 

Osco Drug, Inc., 895 F.2d 46, 48-49 (1st Cir. 1990), and it
 

would be pleonastic to repeat the standard here.

 II
 

 Prison restrictions that implicate constitutional

rights are judged by the reasonableness standard. See
 

Washington v. Harper, 494 U.S. 210, 224 (1990); O'Lone v.
 

Estate of Shabazz, 482 U.S. 342 (1987); Turner v. Safley, 482
 

U.S. 78 (1987). Under this standard, an inmate's First

Amendment right must yield to prison rules and regulations

 -6-

that are "reasonably related to legitimate penological

interest." Turner, 482 U.S. at 89. To ensure that judges
 

accord appropriate deference to decisions of prison

administrators anent the delicate balance of these competing

principles, the Court put in place a "reasonableness test

less restrictive than that ordinarily applied to alleged

infringements of fundamental constitutional rights." O'Lone,
 

482 U.S. at 349 (punctuation and citation omitted). Thus, if

prohibiting plaintiff's possession of certain paraphernalia

in the DSU strikes a reasonable balance between the right to

free exercise of religion and the prison's asserted interest

in security, plaintiff's First Amendment claim will fail.3

See Reed v. Faulkner, 842 F.2d 960, 962 (7th Cir. 1988).
 

 The parties have briefed the appeal in terms of the

Turner rubric. Assuming, arguendo, that Turner applies to
 

the individualized decision here at issue, see, e.g., Frazier
 

v. Dubois, 922 F.2d 560, 562 (10th Cir. 1990) (applying
 

Turner to an individualized prison action), the Turner Court
 

identified four factors that "are relevant to, and that serve

to channel, the reasonableness inquiry." Thornburgh v.
 

Abbott, 490 U.S. 401, 414 (1989). In O'Lone, where the
 

curtailment of Muslim inmates' rights to attend religious

 

3. We assume, for present purposes, the sincerity of
Street's professed religious beliefs. Since defendants
elected not to dispute this issue below, they cannot dispute
it for the first time on appeal.

 -7-

services was upheld, the Court summarized the Turner factors
 

in the following manner:

 1) Does the challenged regulation have a
 logical connection to the legitimate
 governmental interests invoked to justify
 it?

 2) Do alternative means of exercising the
 right remain open to prison inmates? 

 3) What impact would the accommodation of
 the inmate's asserted right have on other
 inmates, on prison personnel, and on
 prison resources generally?

 4) Are there obvious, easy alternatives to
 the policy adopted by the prison
 administrators?

O'Lone, 482 U.S. at 350-53 (citing Turner, 482 U.S. at 89-90,
 

93). These factors have regularly been applied in

determining whether a prison policy violates an inmate's free

exercise rights. See, e.g., Abdullah v. Gunter, 949 F.2d
 

1032, 1035-36 (8th Cir. 1991), cert. denied, 112 S. Ct. 1995
 

(1992); Fromer v. Scully, 874 F.2d 69, 74-76 (2d Cir. 1989);
 

Cooper v. Tard, 855 F.2d 125, 128-30 (3d Cir. 1988); Williams
 

v. Lane, 851 F.2d 867, 876-78 (7th Cir. 1988), cert. denied,
 

488 U.S. 1047 (1989); cf. Skelton v. Pri-Cor Inc., 963 F.2d
 

100, 103-04 (6th Cir. 1991).

 III
 

 With respect to plaintiff's free exercise claim, we

think that genuine issues of material fact precluded brevis
 

disposition. There are, for example, unanswered questions of

fact as to the composition of the prayer beads (weight,

 -8-

density, etc.) which, in turn, prevent a determination of

whether the ban on them is reasonable, or, for that matter,

whether rosary beads in the hands of other DSU inmates are

deserving of materially different treatment. We accept the

defendants' legitimate concern that religious items in the

possession of inmates may lead to security problems. But, we

believe that the plaintiff has sufficiently put into question

the possible danger to the security of the prison posed by

the prayer beads here at issue.

 It also seems logical that the more solitary a

religious practice, the less plausible is the claim that an

institutional security interest is compromised. Turner
 

instructs that "a regulation cannot be sustained where the

logical connection between the regulation and the asserted

goal is so remote as to render the policy arbitrary or

irrational." Turner, 482 U.S. at 89-90. Unlike free
 

exercise claims involving otherwise non-religious items

(diet, grooming, name changes, and the like) or those

involving group associations (such as congregate worship),

any of which might impact the general prison population, the

religious activity associated with the described use of the

prayer beads appears to involve solely private conduct. The

significance of this fact is highlighted here because, as

plaintiff points out, he would never be able to take the

prayer beads outside his cell; according to him, DSU inmates

 -9-

are uniformly searched, cuffed, and shackled before leaving

their cells. Such a restriction, if true - - and defendants

have not challenged the veracity of plaintiff's account - -

posits an accommodation that both undercuts defendants'

stated security concerns and raises questions as to whether

they overreacted in denying Street the prayer beads. Cf. id.
 

at 90 (under the fourth factor of the test, "the existence of

obvious, easy alternatives may be evidence that the

regulation is not reasonable, but is an `exaggerated

response' to prison concerns") (citation omitted).

 We note, therefore, without implying any view of

the merits, that the record reveals a genuine question as to

whether defendants' justification is sufficient to outlaw the

prayer beads.4 See Mosier v. Maynard, 937 F.2d 1521, 1527
 

(10th Cir. 1991) (remanding for factual development and

application of Turner factors where plaintiff raised a
 

genuine issue of material fact as to the reasonableness of a

prison policy); Swift v. Lewis, 901 F.2d 730, 731-32 (9th
 

Cir. 1990) (vacating summary judgment in favor of prison

officials in the absence of evidence that officials' asserted

 

4. Although we have been discussing plaintiff's prayer beads
to this point, the same analysis applies to plaintiff's
religious necklace. Appellees, in their brief, argue that
the physical characteristics of the beads and the necklace
are so similar as to be virtually indistinguishable from one
another, and that both items pose the same security risks.
On remand, of course, the defendants will have an opportunity
to revisit this issue, should they so desire.

 -10-

reason for prison grooming policy justified treating

appellants differently from other religious groups); see also
 

Ali v. Dixon, 912 F.2d 86, 91 (4th Cir. 1990); Hunafa v.
 

Murphy, 907 F.2d 46, 48 (7th Cir. 1990); cf. Friend v.
 

Kolodzieczak, 923 F.2d 126 (9th Cir. 1991) (affirming summary
 

judgment in favor of prison officials because regulation

prohibiting Roman Catholic inmates from possessing rosaries

in their cells satisfied Turner test).5
 

 IV
 

 We turn next to plaintiff's claim that he has been

subjected to differential treatment because of his religion.

The essence of the Equal Protection Clause is that government

should treat similarly situated persons alike. See, e.g.,
 

Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432
 

(1985). Prison administrators confronted with an equal

protection claim "need only demonstrate a rational basis for

their distinctions between organizational groups." Jones v.
 

North Carolina Prisoners' Union, 433 U.S. 119, 134 (1977).
 

Courts must defer to such differentiation unless it is clear

that "the two groups are so similar that discretion has been

abused." Id. at 136; see also Feeley v. Sampson, 570 F.2d
 

364, 371 (1st Cir. 1978) (explaining that prison authorities'

 

5. Because the case must be remanded to resolve the
questions we have mentioned, we need not address the second
and third Turner factors. We think it fitting to note,
 
however, that neither defendants' moving papers nor the
district court's order addressed either point.

 -11-

decisions cannot be arbitrary); Nadeau v. Helgemoe, 561 F.2d
 

411, 416 (1st Cir. 1977) (similar). Thus, so long as the

prison officials' response is shown to be rationally

supported, an equal protection claim must fail. See Reed,
 

842 F.2d at 962; Brandon v. District of Columbia Bd. of
 

Parole, 823 F.2d 644, 650 (D.C. Cir. 1987). Conversely,
 

arbitrary enforcement of a stated security rationale violates

prisoners' rights. See, e.g., Benjamin v. Coughlin, 905 F.2d
 

571, 578 (2d Cir.), cert. denied, 498 U.S. 951 (1990).
 

 Here, it is undisputed that Roman Catholic inmates

in the DSU are allowed rosary beads. How prison authorities

have accommodated other religions is relevant, but not

determinative, in deciding whether a plaintiff has been

treated in an unduly restrictive manner. See Feeley, 570
 

F.2d at 371. Assuming that prayer beads and rosary beads can

be equated for purposes of equal protection analysis, see id.
 

at 375; Hatch v. Sharp, 919 F.2d 1266, 1268-69 (7th Cir.
 

1990), cert. denied, 111 S. Ct. 1693 (1991), it is not
 

obvious if (or how) the asserted security concerns posed by

plaintiff's confiscated prayer beads and necklace6 were

satisfied so as to permit another religious group in the DSU

to possess rosary beads. If the comparison between prayer

and rosary beads can fairly be made, such differing

 

6. The defendants' affidavit is silent anent the wearing of
religious necklaces or crucifixes in the DSU.

 -12-

restrictions point to (but, again, are not conclusive of)

"possible arbitrariness." Feeley, 570 F.2d at 364. As
 

noted earlier, the defendants' affidavit describing the type

of rosary beads that are "generally" allowed to others was

sufficiently countered by the plaintiff's opposing affidavit

so as to create material questions as to the relative and

relevant differences between the religious items in question.

The affidavits also leave unresolved questions about whether

the treatment accorded the plaintiff was disparate or

intentional. These conflicts preclude summary judgment on

this count.

 V
 

 We need go no further. We have considered most of

the parties' other arguments on appeal and find them to be

without merit.7 We hold, however, on the present record,

that the district court erred to the extent that it accepted

defendants' proffered security rationale as conclusive.

 

7. We say "most" rather than "all" because the district
court did not address two other questions raised on
defendants' motion for summary judgment, namely, a supposed
failure to allege defendants' personal involvement and an
asserted service-of-process deficiency. We take no view of
these issues. See Nereida-Gonzalez v. Tirado-Delgado, No.
 
92-2084, slip op. at 13 (1st Cir. April 14, 1993). We do
note, however, plaintiff's sworn statement that despite
repeated requests on his part, prison officials have not
provided him with the address of a defendant who has left
their employ. On remand, plaintiff should be afforded
another opportunity to perfect service of process on this
defendant. By the same token, defendants remain free to
reassert the defenses mentioned.

 -13-

Accordingly, since the facts surrounding defendants'

justification for refusing to allow plaintiff to possess

prayer beads and a religious necklace in the DSU require

further development, we vacate the grant of summary judgment

in favor of the defendants, and remand for further

proceedings to be held before another trier pursuant to D.

Mass. Loc. R. 40.1(i).

 Vacated and remanded. Costs to appellant.
 

 -14-