12 F.3d 190
 Willa Dean HOWELL, Individually and as administratrix of the
estate of Van Howell, Plaintiff-Appellant,
Lisa Howell, through her natural guardian and next friend
Willa Dean Howell, Lori Miller, Plaintiffs,
v.
Charles E. BURDEN, individually and as Superintendent of
Augusta Correctional and Medical Institution,
Defendant-Appellee.
 No. 93-8129.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 21, 1994.
 
 J. Vincent Cook, Cook, Noell, Tolley & Wiggins, Athens, GA, for plaintiff-appellant.
 Stephen E. Curry, Augusta, GA, John C. Jones, Asst. Atty. Gen., Atlanta, GA, for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Georgia.
 Before ANDERSON and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.
 GODBOLD, Senior Circuit Judge:
 
 
 1
 This is the second appeal in a 42 U.S.C. Sec. 1983 case that arises out of the death of Van Howell, a Georgia prisoner. It was brought against several medical and prison officials by Howell's widow, who alleges that the defendants were deliberately indifferent to Howell's health in violation of the Eighth Amendment.
 
 
 2
 Howell suffered from asthma. He died in January 1985 after a severe asthma attack, in the Augusta Correctional and Medical Institution ("ACMI"), a combination prison and hospital at which he was incarcerated.
 
 THE BACKGROUND
 
 3
 The first appeal, Howell v. Evans, 922 F.2d 712 (11th Cir.1991), came up from rulings denying motions of several defendants for summary judgment asserted on qualified immunity grounds. We held that qualified immunity protected the attending physicians and Correctional Medical Services, Inc., which, under a contract with the Georgia Department of Corrections, provided medical and administrative services to ACMI. We affirmed the ruling of the district court denying the motion for summary judgment made by Charles Burden, superintendent of ACMI, which was based upon his claim of qualified immunity.*
 
 
 4
 At trial following remand, after the close of evidence, the district court granted Burden's Rule 50 motion for judgment as a matter of law.[1]
 
 THE FIRST APPEAL
 
 5
 In the first appeal we addressed the issue of qualified immunity for Burden:
 
 
 6
 The issue of qualified immunity for Burden turns first on whether a reasonable person in his position as supervisor should have known that Howell needed proper treatment and that Howell should have been moved or provided with special care, and second on whether Burden's failure to do so constituted deliberate indifference.
 
 
 7
 922 F.2d at 722. We held that it was clearly established in 1984 that an official's denial of or delay in obtaining proper treatment could constitute deliberate indifference. Id. We described evidence that Burden was informed by the medical staff of inadequacies in Howell's medical care, particularly by a memo from the treating physician, Dr. Charles Youmans, written in June 1984. Burden's contention, however, was that he had no responsibility to obtain equipment, hire personnel, or to suggest that Howell be moved to another facility. We held that Burden could rely on medical personnel for clinical determinations but that, once he was informed of the treatment Howell needed and that he could not be treated under current conditions at ACMI, remaining decisions to be made were administrative, "an area Burden acknowledged was under his control." Id. We concluded that once Burden knew the urgent needs for personnel and equipment to care for Howell his decision not to seek either but to allow the "budgeting process" to determine whether Howell would receive necessary treatment could be found to be deliberately indifferent under the prohibition of delays in obtaining treatment set out in Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Also we pointed out that Burden had sought a medical release for Howell, and that the release had been denied, but that Burden did not seek treatment for Howell at any other facility though the doctors at ACMI had noted that such treatment was available. Id. Accordingly, we held that Burden should have known that his actions and policies could violate the Eighth Amendment and he was not entitled to immunity.
 
 THE TRIAL
 
 8
 (1) Burden's responsibilities
 
 
 9
 At trial Burden introduced evidence offered to prove that he had no responsibility of any kind with respect to needs for personnel and equipment to care for the medical requirements of prisoners. He disclaimed responsibility for personnel, equipment needs, budgeting affecting medical care, and for transfers to other institutions for medical reasons. He portrayed himself as a law enforcement officer whose job was to provide support services, to keep prisoners confined and the facility secure so that medical personnel could provide services, and to transport and secure prisoners to be moved to other facilities. Burden's evidence included his own testimony and testimony from the state medical director for the Department of Corrections.
 
 
 10
 As we understand the district judge's oral statement of reasons for granting a Rule 50 judgment, he accepted Burden's description of himself as an administrator having no responsibilities relating to medical needs and care of inmates. This characterization of Burden's responsibilities had been rejected in the first appeal, based on the summary judgment record. It was erroneously accepted by the district court at trial, based on the trial record.[2] Considering all the evidence with all reasonable inferences favoring Howell, reasonable persons could find that Burden had responsibilities and authority relating to care and treatment of Howell and that he acted with deliberate indifference to Howell's serious medical needs.
 
 
 11
 In the first appeal, based on the summary judgment record, this court found that Burden received the June 1984 memorandum by Dr. Youmans addressed to Billy Garrison, a counselor and sent forward by Garrison to Burden. The memorandum conveyed that Howell was in serious condition, and that his needs for a proper diet, a smoke-free environment, and the assistance of a respiratory therapist and a clinical dietician could not be met at ACMI. The memo described Howell as having "severe extrinsic asthma," plus cardiac arrythmia with some of his medication. It went on to say:
 
 
 12
 Although we were able to lower his dose of steroids the patient remains basically unchanged. He wheezes daily, has severe exercise intolerance, and he becomes exhausted after walking about 20 feet.
 
 
 13
 After submitting him to an allergy specialist for allergy testing he was found to be allergic to molds, trees, grasses, weeds, tomatoes, eggs, onions and probably sodium bisulfite which is a very common ingredient in most of our foods and many of our medications. Moreover, he is obviously worsened by exposure to tobacco smoke, dust and other inhalants.
 
 
 14
 He presently is scheduled to undergo hypo sensitization to some of the many items to which he is allergic. Meanwhile we have asked the offending foods be omitted from his diet, and that he be maintained away from exposure from dust and cigarette smoking. Up to this point we have not been able to provide him with a diet free of sodium biosulfite [sic], eggs, tomatoes, onions, and their products. We have not been able to set aside a no smoking pulmonary ward for patients with this type of respiratory illness. We do not have a clinical dietician on the staff at ACMI nor in the department of DOR at this time; nor do we have a respiratory therapist. Without conscientious professional support in areas of dietary and respiratory therapy we will be unable to manage Mr. Van Howell's symptoms because of the number and severity of his allergies.
 
 
 15
 Mr. Howell is a veteran and there are regional VA hospitals whose patient population areas are large enough that a smoke free pulmonary ward can be supported with aggressive respiratory therapy and conscientious meal plan by a registered dietician. As we are unable to provide this support at this time I feel that a release for medical reasons would be the humane thing to do. I can say without reservation that this patient qualifies as an asthmatic cripple and it is the nature of his disease to progressively and insidiously worsen as time goes on. If you require more information concerning this patient and his condition I will be happy to oblige.
 
 
 16
 We held that the record disclosed no indication that Burden did anything to remedy the deficiencies in Howell's care nor did he seek to obtain proper equipment for his treatment. 922 F.2d at 722.
 
 
 17
 At trial Burden testified that, although he had initialed the Youmans' memorandum, he could not recall having read it. It therefore was an issue for the jury as fact finder to decide whether he became aware of the contents.
 
 
 18
 Plaintiff's trial exhibits 2, 3 and 5 are "Procedure Statements" of ACMI, all dated February 16, 1984. On the subject of "Support Services" exhibit 3 described the following "Policy":
 
 
 19
 The Medical Director, Health Care Administrator, Superintendent, and Health Services (Department of Offender Rehabilitation Central Office) will work in concert to ensure adequate staff, space, equipment and supplies of the Medical Department of ACMI to provide medical services to the inmate population.
 
 
 20
 In the event that inmate needs are beyond the scope of availability of the ACMI, hospital care outside the institution will be provided utilizing Talmadge Memorial Hospital or other community resources as appropriate.
 
 
 21
 Exhibit 5, on the subject "Medical Autonomy" stated this as an "Objective":
 
 
 22
 To assure physicians and dentists are the ultimate authority in matters of medical and dental judgement.
 
 
 23
 It set out the following under the title of "Policy":
 
 
 24
 Judgement matters of a medical, dental and psychiatric nature shall be the sole province of the attending professional.
 
 
 25
 * * * * * *
 
 
 26
 Health care delivery is a joint venture by the administration as well as the health care providers. In this regard, the health authority arranges for the availability of health care services and the ACMI superintendent provides the administrative support for accessibility of health services to inmates.
 
 
 27
 Exhibit 2 set out this "Policy" for "Administrative Meetings":
 
 
 28
 As needed, the Health Authority, Health Care Administrator and the Superintendent will meet to discuss and/or make decisions involving more immediate and long-range applications involving the Medical Component of ACMI.
 
 
 29
 Plaintiff's exhibit 6 is a "Progress Record," dated November 6, 1984, prepared by Dr. Youmans. It described a complaint by Howell that he suffered from a trip to a clinic for treatment of his allergy. Howell reported that other prisoners and the officers in charge smoked en route and that the van in which they were transported was inadequately ventilated to clear the air of smoke, causing him to suffer substantial discomfort during the trip. Dr. Youmans then said:
 
 
 30
 In keeping with the standards of the surrounding society, we are obliged to provide [Howell] with non-smoking transportation, especially en route to another clinic.
 
 
 31
 In his trial testimony Burden acknowledged his responsibility for transporting prisoners to other facilities for treatment.
 
 
 32
 In the same report Dr. Youmans described the recommendation by a doctor of the "aller-immunology clinic" at another facility that Howell have plastic covers for his mattresses and pillows and for a portable air cleaner. He went on to say:
 
 
 33
 I will present the [sic] Dr. Robinson and Mr. Nichols the recommendations for obtaining the plastic bed zip covers, and the air cleaner. However, after six months he still is not getting the diet with the proper restrictions. It should be apparent by now that without a clinical dietitian to oversee this request, we will not be able to obey this basic recommendation. A clinical dietitian contracted by CMS for ACMI is scheduled to come on board soon. Otherwise I am obliged to say that the prison system cannot provide the support service he needs to medically control his disease.
 
 
 34
 Plaintiff's exhibit 8 is a line-and-box "Medical Organizational Chart" that depicted the ACMI organizational structure. The warden--superintendent Burden--is shown as the top authority, with "administrative authority" running from him downward to the hospital administrator and the medical director. Clinical authority was not shown as derived from him.
 
 
 35
 These items of evidence, by themselves, were sufficient to permit the jury to reject Burden's defense that he had no responsibilities that ran to medical care and treatment of prisoners.[3]
 
 
 36
 (2) Proximate cause
 
 
 37
 A second ground for the Rule 50 judgment was that any act or failure by Burden was not the proximate cause of Howell's death. Dr. Youmans' June memo described Howell's deteriorating condition and set out the need for personnel, and items of equipment and furnishings, necessary to care for Howell but not available at ACMI. In a report concerning Howell's death the reporting physician stated that Howell's asthma had progressed to the point at which the medical staff would no longer be capable of taking care of him, because of the absence of a respiratory therapist and a clinical dietician. Another doctor testified that Howell's exposure to cigarette smoke was a contributing factor to the worsening of his condition and ultimate death. Still another doctor testified that his life expectancy was reduced by continued exposure to cigarette smoke and improper diet. If a fact finder concludes that any or all of these matters are within the scope of Burden's responsibilities and that his actions or inactions with respect to them constituted deliberate indifference to Howell's health, proximate cause (sole or contributing) is a jury issue.
 
 
 38
 REVERSED and REMANDED.
 
 
 
 *
 After the decision of this court in the first appeal at 922 F.2d 712, appellees therein petitioned for rehearing and rehearing en banc. Subsequently they moved to withdraw the petition on the ground that the case had settled and moved that the judgment of the district court be vacated and the cause remanded with direction that the case be dismissed. This motion was granted April 29, 1991 by order published at 931 F.2d 711
 As it turned out the case had not been settled as to defendant Burden. Therefore, on June 24, 1991 this court entered the following order, which was not published:
 "Appellees' and appellants' Mendoza and Correctional Medical Systems, Inc. motion to amend the April 29, 1991 order granting appellees' motion to withdraw the petition for rehearing and suggestion for rehearing en banc is GRANTED. That portion of the order which vacated the opinion at 922 F.2d 712 and the judgment of the district court and remanded the case to the district court with direction that the case be dismissed is VACATED and the opinion at 922 F.2d is REINSTATED."
 Thus, on remand the case was tried against only the defendant Burden, and at trial and on this appeal the opinion at 922 F.2d 712 has been in effect.
 
 
 [1]
 The 1991 amendments to Rule 50 changed the terminology from "directed verdict" to "judgment as a matter of law." The Advisory Committee Notes make clear that this new terminology does not alter the traditional standards applied by district courts and courts of appeal in passing on such motion. See generally, 5A Moore's Federal Practice Sec. 50.01 (1992). Thus the standards of pre-1991 cases remain applicable
 
 
 [2]
 Howell seems to contend that the first appeal established as a matter of law the scope of Burden's duties and responsibilities, precluding revisiting that issue at trial on the basis of all the trial evidence. We do not agree that the summary judgment record precluded reexamination at trial on a fleshed-out record
 
 
 [3]
 In the first appeal, in discussing possible liability of CMS, we referred to the contract between CMS and the Department of Corrections and to the responsibilities of Dr. Robinson as overall administrative supervisor for clinical services at ACMI. We observed that Dr. Robinson reported to Burden, the person responsible for "ultimate decision[s]" for services. 922 F.2d at 723 and 725. We are not able to identify this contract as having been introduced at trial, therefore we have not relied upon it as evidence tending to show that Burden had administrative responsibilities with respect to medical care