Susie **LEMOINE, Individually and as Personal Representative of the Estate of Andrew Lemoine, Deceased, Plaintiffs,**

v.

**NEW HORIZONS RANCH AND CENTER, INC., Henry Lewis, Michael Snider, Michael Nix, Travis Pearson, Waylon Grelle, Marquis Robertson, Richard Markowski, Jodie Miler, Samuel Bradley Miller, M.D., Paul Scott, Kelly Hutchinson, Wayne Hairgrove, Jane/John Doe No. 1, Jane/John Doe No. 2, and Jane/John Doe No. 3, Defendants.**

No. CIV.A. 6:97–CV–081–C.

United States District Court,
N.D. Texas,
San Angelo Division.

Jan. 6, 1998.

---

**43.** See note 9, supra.

**44.** Id.

**45.** Pl's Dep. at 16, 17.

Michael Buckley Paddock, Law Office of Michael B. Paddock, James Warren Lane, Law Office of Jim Lane, Fort Worth, TX, Portia Jeanne Bott, Law Office of Portia J. Bott, Dallas, TX, for Plaintiffs.

Ronald William Johnson, Jr., Touchstone Bernays Johnston Beall & Smith, Dallas, TX, George S. Finley, Smith, Carter, Rose, Finley & Hoffman, San Angelo, TX, Laurie Rayson Eiserloh, Attorney General of Texas, Austin, TX, for Defendants.

### MEMORANDUM OPINION AND ORDER

CUMMINGS, District Judge.

On this day the Court considered Defendant Dr. Samuel Bradley Miller's Motion to Dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, filed September 12, 1997. Plaintiff did not file a response. Defendant Miller ("Miller") argues that the Court should dismiss Plaintiff Susie Lemoine's ("Lemoine") claims for lack of subject matter jurisdiction because she failed to properly state a cause of action against him under 42 U.S.C. § 1983. After considering all relevant arguments and evidence, the Court **DENIES** Miller's Motion to Dismiss.

## I.

### BACKGROUND

Because Miller's Motion to Dismiss under Rule 12(b)(1) is a facial attack upon the subject matter jurisdiction of Lemoine's lawsuit, the Court considers the allegations of the complaint to be true. *Saraw Partnership v. U.S.*, 67 F.3d 567, 569 (5th Cir.1995); *see also Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997) (explaining that when reviewing a motion to dismiss under Rule 12(b)(6), a court must also accept the allegations of the complaint to be true). *See* Section II, *infra*.

This suit involves the death of a twelve-year-old child, Andrew Lemoine ("Andrew"). Andrew's father, Paul Lemoine, had his parental rights terminated years earlier in Andrew's life, and later the Tarrant County Child Protective Services ("CPS") assumed Managing Conservatorship of Andrew. Susie Lemoine, Andrew's mother, retained her parental rights and attempted to maintain a parent-child relationship with Andrew although he was under the custody of the State of Texas.

Andrew was placed in many foster homes throughout the intervening years, with poor success. In an effort to place Andrew in an environment more suited to his perceived needs, CPS placed Andrew in institutional care on April 29, 1992, at a facility in South Texas. In June of 1995, CPS transferred Andrew to Defendant New Horizons Ranch and Treatment Center, Inc. ("New Horizons"), a residential treatment center licensed by CPS to provide long- and short-term care for children, many of whom are in state custody. New Horizons maintains a contract with CPS whereby New Horizons assumes the state's responsibility for the day-to-day care and supervision of children in state custody. In November of 1992, CPS and New Horizons executed a written contract entitled "Agreement Between the Texas Department of Protective and Regulatory Services and 24–Hour Child Care Facility." In the agreement, they describe New Horizons as "Residential Treatment," and CPS agreed to "purchase 24–hour child care" from New Horizons.

New Horizons is in a rugged, isolated portion of the Hill Country in Mills County, Texas. It is a facility designed to treat wayward or troubled youth in a rugged, rural setting through work-hardening programs. New Horizons does not have a staff of on-site medical professionals, and it is located over thirty miles from any medical facility or health care providers. Miller was the outside contract-psychiatrist for New Horizons who treated Andrew.

Miller saw Andrew twice before Andrew died. On both occasions, Miller continued to prescribe medication that Andrew had been taking while at the facility in South Texas, specifically Ritalin, Mellaril, and Tegretol. Lemoine alleges that Miller questioned the medical need for Andrew to be taking these medications. Miller was allegedly aware that the treatment plan which New Horizons placed Andrew on entailed significant physical activity outdoors, including such activities as building rock walls. Miller placed no restrictions on Andrew's physical activity or exposure to the weather conditions that Andrew would encounter at New Horizons, de-spite the type, amount, and combination of drugs Miller prescribed.

Andrew did not respond positively to either the drugs or the therapy regimen that he received. On July 27, 1995, by way of punishment for prior inappropriate behavior, Andrew was assigned with two other boys to build a rock wall outdoors on the grounds of New Horizons. The temperature in the area that day was allegedly 96 degrees Fahrenheit by 11:00 a.m., and 103 degrees by 2:00 p.m.

Sometime after the noon hour break, Andrew collapsed from the heat, and an emergency medical team arrived to render care at approximately 3:15 p.m. When Andrew arrived unconscious at the Brownwood Regional Medical Center, his body temperature was 108 degrees. Although the medical teams attempted lifesaving measures, they eventually pronounced Andrew dead at approximately 4:45 p.m. that same day. An autopsy cited heat stroke as the cause of death, and revealed many bruises, contusions and blisters on various parts of Andrew's body.

Andrew's mother instigated this lawsuit, alleging that Miller along with others failed to reasonably monitor and supervise Andrew and his medication regimen. She specifically alleges that Miller negligently prescribed medication to Andrew which made him sensitive to heat and sunlight. Lemoine's suit also alleges that Miller, along with the rest of the staff at New Horizons, violated Andrew's civil rights under color of state law within the meaning of 42 U.S.C. § 1983.

## II.

### STANDARD FOR MOTION TO DISMISS UNDER RULE 12(b)(1)

■ Miller contends that because he is not a "state actor," this Court must dismiss Lemoine's suit against him for lack of subject matter jurisdiction. He argues for dismissal based on Lemoine's failure to state a cause of action under 42 U.S.C. § 1983. The Fifth Circuit Court of Appeals, however, has held that when a section 1983 suit is challenged for lack of federal question subject matter jurisdiction, a district court should treat the motion to dismiss as an argument on the merits of the claim. *Daniel v. Ferguson,* 839

F.2d 1124, 1127 (5th Cir.1988). In *Daniel,* the court noted that

> [w]hether a federal court has jurisdiction to decide a case and whether a plaintiff has a cause of action under a federal statute are distinct inquiries that must be addressed separately.... [T]he failure to present an adequate section 1983 claim does not strip the court of jurisdiction unless the claim is clearly immaterial, frivolous, and wholly insubstantial....
>
> This court, consistent with the great weight of legal authority, has held that when a defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper procedure for the district court is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's case.

*Id.* (citing *Daigle v. Opelousas Health Care, Inc.,* 774 F.2d 1344, 1346–47 (5th Cir.1985)) (footnotes omitted). Because Lemoine's claim is not clearly immaterial, frivolous, or wholly insubstantial, this Court will treat Miller's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) as a direct attack on the merits of Lemoine's case, as in a motion to dismiss for failure to state a claim upon which relief may be granted. FED.R.CIV.P. 12(b)(6).

## III.

## DISCUSSION

Miller contends that Lemoine's complaint fails to establish subject matter jurisdiction because she did not properly allege a cause of action against him under 42 U.S.C. § 1983. Miller premises his argument on the theory that the complaint does not properly allege Miller was acting "under color of state law." 42 U.S.C. § 1983. To recover under the civil rights statute of 42 U.S.C. § 1983, a plaintiff must prove that she has been deprived of a right "secured by the Constitution and the law" of the United States, and that the persons depriving her of this right acted under color of state law. 42 U.S.C. § 1983; *Daniel,* 839 F.2d at 1128. Miller contends that he is merely a private physician who had a private contract with a private residential treatment facility, namely New Horizons. Miller avers that being a state actor is impossible for New Horizons merely because it has a contract with the state to care for wards of the state. Miller reasons that because New Horizons cannot be a state actor, he therefore cannot be a state actor merely by contracting with New Horizons.

■ The sole authority that Miller relies on for the proposition that he is not a state actor is *Rendell–Baker v. Kohn,* 457 U.S. 830, 842, 102 S.Ct. 2764, 2772, 73 L.Ed.2d 418 (1982). *Kohn,* however, is inapposite to the case *sub judice.* *Kohn* involved former teachers at a private school for maladjusted children who brought an action under 42 U.S.C. § 1983 against the school for violation of their constitutional rights when they were fired. Miller relies on the Supreme Court's holding that a private entity entering into a contract with a state does not a state actor make. Miller's reliance on *Kohn* is misplaced, however, for *Kohn* is factually distinguishable from the instant case.

A private day school such as the one in *Kohn* that receives public funding by contracting with a state is very different from a private residential treatment center to which a state has delegated 24–hour care of troubled juveniles. The relationship between CPS and New Horizons is more than merely contractual or regulatory. The State entrusted the well-being and lives of children on a 24–hour basis to New Horizons. Such a plenary delegation of paramount duties to these children inexorably leads to the conclusion that New Horizons' acts are "fairly attributable to the state." Therefore, *Kohn* is entirely distinguishable from the case at bar.

The issue of whether a private residential juvenile treatment center that contracts with a state for 24–hour care is a state actor under 42 U.S.C. § 1983 is an issue of first impression within the Fifth Circuit. Private residential treatment centers that have contracts with a state to provide care on a 24–hour basis can be analogized to private prisons for section 1983 analysis purposes. In both cases, the people in custody are there against their will, and it is the state that sends them to either institution. The state pays for their housing, food, medical, and

educational needs. In both places, the residents are not free to choose their own medical care givers, but are forced to receive treatment from whomever has a contract with either the private prison or juvenile residential treatment center. In both instances, people are sent to these institutions for past misbehavior, and society expects some sort of penological process to occur wherein these residents are rehabilitated back into society.

In this case, wards of the state are sent to New Horizons for its purported ability to reform troubled youths. While New Horizons is not a "private prison" *per se*, it does however have many characteristics of a private prison, in the sense that both places involve 24–hour care of people with behavior problems. The main difference between public prisons and private residential treatment centers is that in a public prison or detention center, the state directly pays for and administers the facility, while in a private residential treatment center, the state pays for the care and delegates its full authority to exercise that care on a 24–hour basis to the private entity. The main difference in this case is that a private, rather than public, entity administers care and accepts the duty to protect the life, health, and well-being of the wards entrusted to it. Because of the total delegation of authority by the state to New Horizons for the medical care, housing, nutrition, and supervision of these youths on a 24–hour basis, and because these wards of the state are sent to New Horizons for past misbehavior and on an involuntary basis, New Horizons can therefore be likened to a private prison for section 1983 state action analysis.

In *Lugar v. Edmondson Oil Co.*, the United States Supreme Court noted that a private party may be held to be a state actor under section 1983 under three circumstances, depending upon the factual context: (1) Where the private party has exercised powers that are "traditionally the exclusive prerogative of the state," the "public function test" is applied; (2) where the state has exercised coercive power or has provided such significant encouragement, whether covert or overt, that the action of the private party must in law be deemed to be that of the state, the "state compulsion test" is utilized; or (3) where there is a sufficiently close nexus between the state and the challenged action of the private party so that the action of the party may be fairly treated as that of the state itself, the "nexus test" is employed. 457 U.S. 922, 939, 102 S.Ct. 2744, 2754–55, 73 L.Ed.2d 482 (1982).

The state compulsion and nexus tests are not the most applicable paradigms to this case. However, under the public function test, New Horizons is properly characterized as a state actor. Courts have held that if a state contracts with a private corporation to run its prisons, it would no doubt subject the private prison employees to section 1983 suits under the "public function" doctrine. *Skelton v. Pri–Cor, Inc.*, 963 F.2d 100, 102 (6th Cir.), *cert. denied*, 503 U.S. 989, 112 S.Ct. 1682, 118 L.Ed.2d 398 (1992); *Blumel v. Mylander*, 919 F.Supp. 423, 427 (M.D.Fla.1996)(citing *Plain v. Flicker*, 645 F.Supp. 898, 907 (D.N.J.1986)). Based upon the extensive contractual relationship between the state and New Horizons, wherein New Horizons assumed the state's total responsibility for the care of troubled juveniles, the Court finds that under the public function doctrine analysis, New Horizons is a state actor for purposes of 42 U.S.C. § 1983. *West v. Atkins*, 487 U.S. 42, 50–51, 108 S.Ct. 2250, 2256, 101 L.Ed.2d 40 (1988); *cf. Richardson v. McKnight*, —— U.S. ——, 117 S.Ct. 2100, 2108, 138 L.Ed.2d 540 (1997) (deciding an issue of qualified immunity under 42 U.S.C. § 1983, but remanding to the district court the threshold issue of whether prison employees can be liable under 42 U.S.C. § 1983 because a private firm employs them).

■ The next issue to be decided, *res nova*, is whether a private physician is a state actor under section 1983 by contracting with a private juvenile detention center, who in turn has a contract with the state to provide 24–hour care for wards of the state. The United States Supreme Court has clearly held that a physician who is under contract with the state to provide medical services to inmates at a state-prison hospital on even a part-time basis acts "under color of state law," within the meaning of 42 U.S.C. § 1983,

when he treats an inmate. *West v. Atkins,* 487 U.S. 42, 50–51, 108 S.Ct. 2250, 2256, 101 L.Ed.2d 40 (1988); *see also Howell v. Evans,* 922 F.2d 712, 723–24 (11th Cir.)(holding that when a state contracts out its medical care of prison inmates, the obligations of the Eighth Amendment attach to persons with whom the state contracts, but a plaintiff must show causation, either by showing that the private party was directly involved in a violation or that the policy or custom of the private party led to the violation), *order vacating appeal,* 931 F.2d 711, 712 (11th Cir.1991), *partially reinstated and appealed sub nom. Howell v. Burden,* 12 F.3d 190 (11th Cir.1994).

Because Miller had a contract to provide medical care for the residents of New Horizons, he was therefore acting "under color of state law" under the precedent of *West v. Atkins,* 487 U.S. at 50–51, 108 S.Ct. at 2256, and is therefore a state actor.

### IV.

### CONCLUSION

Because Miller was acting "under color of state law," Lemoine has alleged a cognizable claim against him under 42 U.S.C. § 1983. Therefore, Miller's motion to dismiss is DENIED. All relief not specifically granted is denied.

SO ORDERED.